204 So.2d 444 (1967)
In re ESTATE of John Andrew KENNINGTON, Deceased.
DEPOSIT GUARANTY NATIONAL BANK, Executor,
v.
Mrs. Mignon T. KENNINGTON.
No. 44538.
Supreme Court of Mississippi.
November 28, 1967.
*445 Butler, Snow, O'Mara, Stevens & Cannada, Henley, Jones & Henley, A.Y. Harper, Jackson, for appellant.
Cox, Dunn & Clark, Green, Green & Cheney, Jackson, for appellee.
SMITH, Justice:
This is an appeal by Mrs. Ardath E. Kennington, Deposit Guaranty National Bank, as executor of the Estate of John Andrew Kennington, deceased, Mrs. Marian Kennington Stevens, John Kennington Stevens and Michael David Stevens from a decree of the Chancery Court of the First Judicial District of Hinds County entered in a suit begun by appellee, Mrs. Mignon T. Kennington, as complainant, in which they were defendants and cross-complainants.
By her bill of complaint, Mrs. Mignon T. Kennington sought to enforce against the estate of her former husband, the late John Andrew Kennington, a marital settlement contract, entered into during the pendency of her divorce action against him, which provided, among other things, that he make payments to her of $750 per month until her death or remarriage.
In their answer, appellants challenged her right to the relief sought because, they alleged, (1) there was no legal consideration for the contract, and (2) the monthly payments, having been incorporated in the divorce decree, in which she had been granted a divorce from Kennington, were merged into such decree so that the obligation lost its contractual character, became alimony and terminated upon Kennington's death.
The cross-bill reiterated the statements contained in the answer, charged that there had been material changes in the status of the parties since the entry of the divorce decree, and alleged that the court, under Mississippi Code 1942 Annotated section 2743 (1956), should modify the decree so as to accord with such changed status. Alternatively, the court was asked to reduce or commute the obligation and to require complainant to accept, in lieu of the monthly payments, a lump sum based upon her life expectancy and probability of remarriage as shown by standard statistical tables. On appeal, for the first time, appellants urge an additional objection to the enforcement of the contract, and now argue that it was part of a collusive agreement between the parties, conditioned upon divorce, and, therefore, was void.
After some fifteen years of marriage, Mrs. Mignon T. Kennington and John Andrew Kennington had separated. She filed a bill against him for separate maintenance and a decree was entered in 1951 granting the prayer of her bill. In 1954 Mrs. Kennington brought suit against her husband for divorce and alimony. In this suit each party was represented by distinguished and able counsel. While the case was pending, after considerable negotiation, a settlement of all issues, save that of divorce, was agreed upon by the parties. This agreement was incorporated in a written contract, prepared and approved by respective counsel for the parties. The contract was entitled "Full Marital Settlement Agreement." The enforcement of one of the provisions of this contract, as embodied in its paragraph (e), is the subject of the present litigation. The relevant portions of paragraph (e) are as follows:
(e) He shall promptly pay her Seven Hundred and Fifty Dollars ($750.00) on June 1, 1954, and Seven Hundred and Fifty Dollars ($750.00) on the first day of each successive month thereafter throughout the lifetime of said Mrs. Mignon T. Kennington, or until she remarries. If she remarries, this Paragraph *446 (e) shall thereafter be ineffective but this paragraph shall not be affected by the death of John Andrew Kennington. John Andrew Kennington binds himself, his heirs, executors and assigns, to this covenant and obligation to her even after his death.

* * * * * *
It is further agreed that the provisions of Paragraph (e) may be inserted in a decree of divorce of the parties, if and when granted by the court, but without affecting the contractual obligation of said provisions hereof after the death of said John Andrew Kennington. (emphasis added).
Following its execution, the contract was submitted to the court for approval, and, several days later, the issue of divorce was tried and a decree was entered granting Mrs. Mignon T. Kennington a divorce from John Andrew Kennington. This decree incorporated the findings of the court with respect to the above contract, as well as this order of the court:
(A)nd the court finding that the parties have agreed on a satisfactory property settlement, and that the defendant should pay the complainant the sum of $2,000.00 in cash now and $750.00 on June 1, 1954, and $750.00 on the first day of each successive month thereafter throughout the lifetime of the complainant, or until she remarries; and the court finding such entire property settlement to be proper and in all things approved by it:
* * * (3) That the defendant, John Andrew Kennington, is ordered and directed to pay the complainant, Mrs. Mignon T. Kennington, the sum of $750.00 on June 1, 1954, and $750.00 on the first day of each successive month thereafter throughout the life time of said Mrs. Mignon T. Kennington or until she remarries. This obligation shall be abated upon her remarriage. This obligation shall not, however, be affected by the death of John Andrew Kennington but such obligation shall be a debt of and a probatable claim against his estate. * * * (emphasis added).
There was no appeal from the decree. From the date of the entry of the decree in 1954 until his death in November of 1965, John Andrew Kennington recognized the validity of the obligation which he had assumed and faithfully made all payments as he had contracted to do. Moreover, he also recognized the validity of the divorce decree by contracting two subsequent marriages, the last of which was to the appellant, Mrs. Ardath E. Kennington, who was his fourth wife and to whom he was married at the time of his death.
After hearing the case, the chancellor delivered an opinion in which the facts are summarized:
On November 7, 1951 Mrs. J.A. Kennington filed a Bill of Complaint against J.A. Kennington for separate support and maintenance. The said Mrs. J.A. Kennington is one and the same person as Mrs. Mignon T. Kennington who brings the matters under consideration by the Court.
In this suit for separate maintenance various specific charges of misconduct on the part of the Defendant and ill treatment to his then wife were made. The parties had for a considerable length of time lived apart. A final and agreed decree was entered in said cause, being No. 43,481, and Exhibit D-1 in this suit.
On March 30, 1954 in Cause No. 47,637 a Bill of Complaint was filed by Mrs. Mignon T. Kennington praying for a divorce from J.A. Kennington and for a settlement of all marital and property rights. This complaint alleged a desertion by the Defendant for a period of almost four years and due to no fault on the part of the Complainant. To this complaint no answer was filed or a defense made. A final decree was entered on May 20, 1954 and exhibited in this cause by Exhibit C-2.

*447 On May 12, 1954, eight days before the final decree in Cause No. 47,637, the parties made an agreement settling all property rights between them. The Defendant knew the extent of his mistreatment of his wife and of her aid and her help in the accumulation of his property and money. His feeling of guilt and remorse because of said mistreatment, and his apparent admission of her help to him during their marriage, must have motivated his making this settlement. This agreement is Exhibit D-2 in the present cause, No. 68,696.
The parties to this solemn agreement, then husband and wife, were mature and intelligent. They were both experienced in marital difficulties and termination of marriages. They both understood the meaning of a property settlement and the meaning of the word alimony. They both knew that the payment of alimony terminated at the death of the husband. Both parties did not want this to happen and such was taken care of in the Full Marital Settlement and Agreement. The attorneys for the respective parties understood the legal differences between alimony and a property settlement and carefully and skillfully avoided the death of the then husband having any affect on the agreed payment each month. Only the remarriage or death of the wife was to terminate this obligation. In paragraph (e) of this agreement there is no doubt as to the intention of the parties. The husband, J.A. Kennington, bound himself for his life and then his executors and assigns.
In the final decree for divorce in Cause No. 47,637 the parties thereto restated their understanding of said paragraph (e) of the agreement and under the pleadings in said cause such could not have been included in the decree by the Court except by agreement.
It is therefore the opinion of the Court that the contract, Exhibit D-2, designated as Full Marital Settlement and Agreement, is a clear and unambiguous contract and that J.A. Kennington encumbered his estate thereby to make the monthly payment set forth therein until the death or remarriage of Mrs. Mignon T. Kennington. It is further the opinion of the Court that all monthly payments in arrears, plus 6% interest from due date, should be paid to Mrs. Mignon T. Kennington and the sum of $750.00 per month as long as she may live and does not remarry.
It will be noted that the issues raised by appellants' pleadings, are, first, there was no legal consideration for the contract, and second, by having the court approve the contract and insert in the divorce decree its provision for monthly payments, such payments became alimony and subject to modification by the court under changed circumstances, and terminated upon Kennington's death. In addition, it is now urged that the contract, having been made in contemplation of divorce, was fraudulently collusive. This argument is based in large measure, upon this paragraph contained in it.
It is further agreed by the parties that if and when this settlement is effected by the parties and a divorce is granted to Mrs. Kennington that John Andrew Kennington shall not have any further responsibility or obligation to her as her husband, except as hereinbefore contained.
Leaving out of consideration appellee's objection that this is a new question, not raised in the court below, and cannot be raised for the first time on appeal, there was no proof to support the charge unless the mere making of the contract is sufficient to give rise to a presumption of collusion. Collusion must relate to the divorce issue and, if present, not only would render the agreement void, but would invalidate the divorce decree.
There was appended to the divorce bill the affidavit required by Mississippi Code 1942 Annotated section 2737 *448 (Supp. 1966), "that it is not filed by collusion with the defendant, for the purpose of obtaining a divorce, but that the cause or causes for divorce stated in the bill are true as stated." Moreover, section 2737 provides that no bill for divorce shall be taken as confessed, but shall be heard or determined upon the merits. It will be presumed from the entry of the decree that the court did its duty, that the ground for divorce was duly proven and that the divorce was not the result of collusion. Collusion, which is a form of fraud, will not be presumed, but must be established by clear and convincing evidence. In Foster v. Wright, 240 Miss. 566, 571, 127 So.2d 873, 875 (1961), this Court said:
It is well-settled doctrine that in all cases the presumption of evidence is in favor of honesty. The law never presumes a wrong  malum non praesumitur. In Tuteur v. Chase & Company, 66 Miss. 476, 6 So. 241, 4 L.R.A. 832, it is stated: `Fraud is not presumed, but it must be distinctly and satisfactorily proved, either directly or by facts or circumstances from which it may reasonably be inferred.' McGehee v. McGehee, 227 Miss. 170, 85 So.2d 799; 24 Am.Jur., Fraud and Deceit, Sec. 256, p. 88.
In Logue v. Logue, 234 Miss. 394, 398-399, 106 So.2d 498, 499 (1958), this Court said:
On the next day after the execution of the separation agreement, there was a final decree rendered reciting that Mr. Logue requested leave to withdraw the original complaint which he had filed and to proceed to trial on the cross bill filed by Mrs. Lessie Vines Logue, and after having heard the testimony the trial court granted her a divorce on the ground of habitually cruel and inhuman treatment. Then the decree follows the terms of the separation agreement as to the property that each of the litigants were to thereafter have and own. The recitals of the decree were a complete rescript of the stipulations of the separation agreement entered into by the parties on the day prior thereto, but without any reference being made in the said decree to such separation agreement.
No appeal was taken by the appellant from that decree of January 30, 1953, and it does not appear from the record that there was any collusive agreement between the parties that Mrs. Logue was to obtain the divorce. The separation agreement left the case open to be heard the next day on its merits as to the question of whether or not she was entitled to a divorce, so far as the record before us discloses. (emphasis added).
The last paragraph quoted from Logue is applicable to the facts of this case.
Nor was it established that no consideration flowed to John Andrew Kennington under the contract. Kennington's obligations to his wife were defined and limited to those stated in the contract which were to be in lieu of those imposed upon him by law, and otherwise he was released. This was a sufficient legal consideration moving to Kennington to support the contract. When the contract was executed, Mignon T. Kennington was his wife and was the aggrieved party in the divorce action. At the time, Kennington's estate was valued at one and one-half million dollars. His misconduct had not relieved him from any of his obligations, notwithstanding the fact that, by reason of her subsequent divorce, she forfeited the right to claim a share of his estate.
The second question raised by the pleadings and argued on this appeal is that the monthly payments constitute alimony and, therefore, either (1) terminated at Kennington's death, or (2) are subject to modification under changed circumstances following his death.
While complete unanimity is lacking in the decisions of the courts of the country on the subject, we think the better reasoned cases, as well as the weight of *449 authority, support the validity of contracts such as that under review in this case. Nor can we say that such a contract violates any public policy of the State. A contract under which the husband obligates himself to make periodic payments to his wife so as to bind his estate after his death would seem to have a salutary purpose. It is nearer within that category of public policy which obligates the husband to support and provide for his wife and which underlies the statutory policy giving her the right to renounce his will if an attempt is made to exclude her from a share in his estate. Neither the approval of the contract by the trial court nor the incorporation in the decree of its provisions relating to the monthly payments, had the effect of stripping the obligation of its contract character, or converting the payments to alimony, which terminated at Kennington's death, or which were subject to modification.
In 24 Am.Jur.2d Divorce and Separation § 911 (1966) is found the following:
Notwithstanding the conflict of judicial opinion as to whether, under provisions in divorce decrees for regular periodic payments of alimony, the obligations thereunder survive the death of the husband and become binding on his estate, it is generally recognized that the parties may, by contract, provide for periodic payments during the life of the wife after the husband's death, so as to make such payments a continuing charge on his estate in case he dies before she does. The problem in these cases is ordinarily the ascertainment from the contract of an intention as to when the liability ceases. If a separation agreement does not contain a specific provision as to the survival of benefits, it must be read as a whole to determine whether it was the intention of the parties that the liability should survive the husband's death. Although it has been said that the burden of proving an intention that alimony payments shall continue after the husband's death is on the wife, provisions concerning the payment of alimony are to be interpreted according to the natural sense and meaning of the language used.
It was the manifest intention of the parties that the obligation to make the payment should survive the death of Kennington. Also, the contract contained an express provision against merger. In 2 Lindey, Separation Agreements and Ante-Nuptial Contracts, section 31 (1967), it is stated:
As to what happens where the agreement is so incorporated, but contains no specific provision against merger, the authorities are not in accord. The majority view is that the agreement survives. When the agreement is a property settlement, the presumption or survival is all the stronger.
Where the agreement contains an express provision against merger, any possible doubt as to its survival is removed.
It has been held that where the decree itself is void, the agreement incorporated in it cannot be deemed merged; it continues in force. Id. at 45-46.
The same author later had this to say:
In the Goldman case ([Goldman v. Goldman] 282 N.Y. 296, 26 N.E.2d 265 (1940), the parties entered into a separation agreement in New York under which the husband was to pay the wife $21,000 a year for her support and that of their two children. Shortly thereafter the wife obtained a New York divorce. In accordance with the provisions of the agreement, the decree incorporated the contractual measure of support. Ten years later the ex-husband applied to the court for a reduction of alimony. The ex-wife opposed the application, contending that under the Galusha case (Galusha v. Galusha, 116 N.Y. 635, 22 N.E. 1114 [6 L.R.A. 487] (1889)) the alimony, having been predicated upon a valid agreement of the parties, could not be changed without her consent. The court rejected her *450 argument, and reduced the alimony to $14,000 a year. In doing so the court reviewed the applicable law, pointing out the following:
(1) Spouses may agree upon a reasonable amount which the husband is to pay for the support of his wife and children. This agreement will be enforced like any other, unless impeached or challenged for legal cause. Neither party can, acting alone or against the other's will, destroy or change the agreement.
* * * * * *
(4) The agreement of the parties cannot and does not limit the judicial power conferred by statute. However, the direction of the court that the husband pay a lesser amount than he agreed to pay does not relieve him of his contractual obligation. The wife may still resort to the usual remedies for the breach of that obligation. But the drastic remedies provided by law  contempt proceedings  are available to the wife only insofar as there is a failure to pay the reduced alimony fixed in the modified judgment. Id. at 40-41.
The contract expressly defines the nature of the obligation as understood and agreed upon by the parties:
This obligation shall not, however, be affected by the death of John Andrew Kennington but such obligation shall be a debt of and a probatable claim against his estate. * * *
The claim was duly probated by appellee as a debt against Kennington's estate. Unmatured installments are within the scope of Mississippi Code 1942 Annotated section 573 (1956), and should be dealt with as provided in that section.
We have reached the following conclusions:
(1) The contract is valid and the obligation assumed by Kennington under it as to the monthly payments is binding upon his estate.
(2) This obligation rests upon contract, the post-mortem payments are not alimony.
(3) Being purely contractual obligations, liability is absolute, not contingent, and may be dealt with as provided by section 573, supra, relating to unmatured claims against estates of decedents.
The relief sought by appellee was in the nature of the specific performance of the contract and her bill contained an offer to do equity. Courts of equity have certain discretionary power in the matter of decreeing the specific performance of contracts and they may and should make equitable modifications in the form of relief granted where to do otherwise would result in undue hardship or injustice.
Section 573 is indicative of a public policy of the State favoring the early closing of the estates of decedents as against delays on account of unmatured claims.
In 24 Am.Jur.2d Divorce and Separation § 875 (1966), it is said that the court has power in a proper case to commute such an unmatured claim to a lump sum payment equal to its present market value.
In 18 A.L.R.2d 1140 (1951), it is said:
And under some statutes the court may award a lump sum in lieu of payments for future support, so as to avoid prolonging the administration of the decedent's estate.
Therefore, the decree of the chancellor, upholding the validity of the contract and sustaining appellee's claim against the estate of John Andrew Kennington, will be affirmed. However, we think that Section 573, supra, as well as the principles of equity, require that the claim, as to future or unmatured payments, be commuted to a lump sum equal to its fair cash value. The case will be remanded for the *451 limited purpose only that a determination may be made by the chancellor of the fair cash value of the claim upon the basis of evidence to be submitted on that question by either party.
Affirmed as to liability and remanded for the limited purpose stated in the opinion.
ETHRIDGE, C.J., and RODGERS, BRADY and PATTERSON, JJ., concur.