## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CA-01008-SCT

*EDWARD F. MCDONALD, JR.*

*v.*

*CARRIE L. MCDONALD*

### CONSOLIDATED WITH

### 93-CA-01198-SCT

*CARRIE L. MCDONALD*

*v.*

*EDWARD F. MCDONALD, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/93 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | HARRIS H. BARNES, III |
| | ROBERT W. KING |
| ATTORNEY FOR APPELLEE: | MICHAEL J. MALOUF |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 11/14/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/5/96 |

### BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.

### PRATHER, PRESIDING JUSTICE, FOR THE COURT:

### I. INTRODUCTION

¶1. On direct appeal, the present case requires this Court to decide whether payments which were designated by a divorcing couple as being "lump sum alimony" but which, pursuant to agreement, were to terminate upon the death of the payor husband and be replaced by a potentially lesser amount

of life insurance proceeds are properly considered to be periodic alimony. Finding the payments in question to be consistent with lump sum alimony, this Court upholds the clearly expressed intent of the parties and finds the payments to constitute non-modifiable lump sum alimony. This Court accordingly affirms the ruling of the Chancellor.

¶2. On cross appeal, this Court holds that the Chancellor was in error in utilizing Mississippi Rules of Civil Procedure 60(b)(6) as a basis for modifying the alimony payments in question upon determining that the payments constituted non-modifiable lump sum alimony. This Court accordingly reverses on cross-appeal.

## II. STATEMENT OF THE FACTS

¶**3.** Dr. Edward McDonald ("Dr. McDonald") and Carrie McDonald ("Carrie") were married on October 18, 1969. On August 21, 1991 the McDonalds executed a Property Settlement Agreement ("Agreement") in contemplation of divorce which provided for the payment of $660,000 in "lump sum alimony" to Carrie over a period of ten years. The Agreement further provided that Dr. McDonald was to maintain a life insurance policy in the amount of $250,000 in favor of Carrie, but that the alimony payments would cease upon his death.

¶4. The McDonalds did in fact divorce on grounds of irreconcilable differences on May 8, 1992, and the Agreement was incorporated into the divorce decree. At the time of the execution of the Agreement, Dr. McDonald had been a practicing emergency room physician earning around $200,000 dollars per year. After obtaining the divorce, however, Dr. McDonald elected to return to medical school to perform a residency in the field of neurology. While serving as a resident, Dr. McDonald's monthly gross salary fell to $2,360, and he was forced to "moonlight" in contravention of medical school regulations in order to meet his $5,000 monthly payments.

¶5. As a result of his dramatically reduced base salary, Dr. McDonald filed a motion to modify the final divorce judgment, asserting that, the language of the Agreement notwithstanding, the alimony in question was in reality periodic rather than lump sum alimony and was thus subject to modification.

¶6. On August 3, 1993, the Chancellor entered an order denying Dr. McDonald's Motion for Modification of Final Judgment, finding that the Agreement in question provided for lump sum alimony which was not subject to modification. However, on September 23, 1993, the Chancellor granted Dr. McDonald relief from the judgment based on Mississippi Rules of Civil Procedure 60(b)(6), and ordered that the monthly payments be reduced from $5,000 to $2,750 for the duration of Dr. McDonald's residency or until July, 1995, whichever was sooner. The Chancellor ordered the "sums required by the Final Judgment in excess of $2,750 to be deferred and placed at the end of the lump sum obligation of the Movant, and bearing interest from due date until fully paid at eight percent per annum." Dr. McDonald appeals the chancellor's ruling that the agreement is non-modifiable; Carrie cross-appeals the Chancellor's Rule 60 (b)(6) ruling which modified the agreement.

## III. LEGAL ANALYSIS OF DIRECT APPEAL

### A. DID THE CHANCELLOR ERR IN DENYING APPELLANT'S MOTION FOR MODIFICATION OF FINAL JUDGMENT?

**B. DOES THE PROVISION FOR ALIMONY IN THE FINAL JUDGMENT OF DIVORCE RENDERED MAY 8, 1992, CONCERN LUMP SUM ALIMONY OR PERIODIC ALIMONY, SUBJECT TO MODIFICATION?**

**C. DID THE CHANCELLOR ERR IN FAILING TO MODIFY THE FINAL DECREE TO PROVIDE THAT THE DECREE PROVIDES FOR PERIODIC PAYMENTS SUBJECT OT MODIFICATION, AND THAT THERE HAD BEEN A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES SINCE RENDITION OF THE FINAL DECREE OF DIVORCE TO WARRANT A MODIFICATION OF THE FINAL JUDGMENT OF DIVORCE**

¶7. The three assignments of error on direct appeal are combined as they all concern the issue of whether or not the payments in question are properly considered to be lump sum alimony which are not subject to modification. Dr. McDonald urges this Court to hold that, the language of the Agreement notwithstanding, the payments set forth in the Agreement actually constitute periodic alimony which are subject to modification upon a showing of a substantial change in circumstances. Dr. McDonald argues that the provision in the Agreement which provides that the payments are to cease upon his death indicates that the payments are properly considered to be periodic alimony, regardless of the label placed by the parties on said payments.

¶8. This Court has consistently held that periodic alimony is subject to modification and ceases upon the wife's remarriage or the husband's death. *Gresham v. Gresham*, 21 So.2d 414 (Miss. 1945), *Wray v. Wray*, 394 So.2d 1341 (Miss. 1981). With regard to lump sum alimony, however, this Court has historically held that such alimony constitutes a fixed liability of the husband and his estate and is not subject to modification. *Butler v. Hinson*, 386 So.2d 716 (Miss. 1980).

¶9. The rule of law providing for the modification of periodic alimony awards arises from the nature of alimony itself, which is based upon the inherently changing financial ability of the husband to support his wife in the manner to which she is accustomed. As a result, the Chancellors of this state have the authority to modify periodic alimony awards upon a finding of a substantial change in circumstances, regardless of any intent expressed by the parties to the contrary. *East*, 493 So.2d 927, 931 (footnote 2), citing *Brabham v. Brabham*, 84 So.2d 147 (Miss. 1955).

¶10. In the case of lump sum alimony, however, said alimony is not considered to be in the nature of continuing support, but rather a property transfer which is vested in the recipient spouse at the time said alimony is awarded. *Jenkins v. Jenkins*, 278 So.2d 446 (Miss. 1973). As such, considerations of the payor spouse's financial circumstances are irrelevant, given that an order for lump sum alimony provides the recipient spouse with a vested right to receive said payments. The fact that payments of lump sum alimony are often paid in installments may give said payments a superficial similarity to payments of periodic alimony, but said fact does not change the vested, non-modifiable nature thereof.

¶11. The Agreement in the present case contains the following provision regarding alimony:

LUMP SUM ALIMONY

Husband agrees to pay to Wife lump sum alimony in the amount of $660,000.00 payable in monthly installments on the 1st day of each month beginning October 1, 1991, in the amount of $5,000.00 per month for 2 years and then $4,500.00 per month for the remaining 10 years, until said sum is paid in full. Each party recognizes that said sum cannot be increased or decreased, or otherwise modified, regardless of the marital status of either party. Both parties agree that said monthly payments shall be considered as income to Wife for tax purposes, and tax deductible to Husband, and that payments shall cease upon full payment of the alimony sum, or upon death of Husband, whichever first occurs.

¶12. Dr. McDonald points to the provision of the Agreement providing that the alimony payments shall end upon his death, stating that "the agreement fails to meet the definition of lump sum alimony because the amount is decreased automatically upon the death of the Appellant." It is true that lump sum alimony is traditionally considered to be a liability of the estate of the party owing said alimony. *Butler*, 386 So.2d at 717. Nevertheless, the mere fact that the alimony in the present case terminates upon the death of Dr. McDonald is insufficient to overcome the clear language of the Agreement, which provides that the alimony is to be non-modifiable lump sum alimony and which provides for payments which are similar in most respects to traditional lump sum alimony.

¶13. This Court has in the past granted divorcing couples a limited freedom to contract for non-modifiable alimony payments which differ in some respects from traditional lump sum alimony. In *East v. East*, 493 So.2d 933 (Miss. 1986), this Court considered a property settlement agreement similar to the one in the present case. In *East*, the parties executed a agreement which provided:

That, as alimony and as further consideration for the settlement of the claim of Wife to Husband's properties, Husband agrees to pay unto Wife the sum of Five Thousand and NO/100 Dollars ($5,000), per month . . . said payment not to terminate upon the death of the husband, but shall constitute a charge against Estate until the death of Wife, irrespective of her proper remarriage. *East*, 493 So.2d at 929.

After seeing his financial fortunes decline, Mr. East filed a motion for a reduction in the monthly payments to his ex-wife. The trial court granted Mr. East's motion, reducing his payments to $4,000 a month. This Court reversed, however, holding that the alimony in *East* was properly considered to be lump sum alimony which was thus not subject to modification by this Court.

¶14. This Court held in *East* that:

When the parties specifically provided in their agreement as part and parcel of their property settlement agreement that the payments would not terminate upon either his death or her remarriage, and she could never ask that any of these payments be increased, which was approved by the court in the divorce decree, this removed any claim that it was no more than periodic alimony. Mr. and Mrs. East are bound by its terms and provisions. *Id.* at 932.

¶15. This Court had previously held that lump sum alimony is a "fixed and certain sum of money which is awarded the wife, the payment of which may, because of the financial condition of the husband, be spread over a period of time, but nevertheless absolutely due and payable in fixed installments." *Wray*, 394 So.2d at 1345. Clearly, the payments in *East* did not constitute a "fixed and certain sum of money" and, as such, did not meet the definition of lump sum alimony found in *Wray*.

This Court nevertheless found that the payments in **East** were properly considered to be lump sum alimony, indicating that the all of the specific requirements of lump sum alimony need not be met in every case.

¶16. This Court in **East** was concerned with granting divorcing parties a limited right to contract with regard to the nature of non-modifiable lump sum alimony in order to best address the particular requirements of their situation. This Court still has this concern, given that the law should not serve to unduly restrict parties' freedom to knowingly reach an agreement for lump sum alimony which best suits their needs. This freedom to contract is not absolute, however, and parties and judges should be mindful of the traditional characteristics of lump sum and periodic alimony in drafting their agreements and decrees for alimony payments.

¶17. When possible, it would be advisable for parties and judges to pattern their alimony agreements and decrees for non-modifiable lump sum alimony according to established precedent of this Court. One advantage of lump sum alimony is that it sets forth the parties' obligations in a fixed and non-modifiable manner and is thus desirable for those parties who wish to avoid the uncertainty and expense of recurring divorce litigation. Obviously, this intent will be frustrated if the language of the agreement itself gives rise to litigation as to the nature of the payments. In such cases of uncertainty, it is for the Chancellor and this Court to determine whether the agreement in question provides for what is essentially lump sum alimony or periodic alimony, and, in cases in which the intent of the parties is not clear, payments will be presumed to be payments of periodic alimony. **Wray**, 394 So.2d at 1345.

¶18. The Agreement in the present case, however, clearly designates the payments as lump sum alimony, provides for the payment of a fixed sum of $660,000, clearly provides that said payments are not subject to modification, and, very significantly, does not provide for a termination of said payments upon Carrie's remarriage. This Court held in **Wray** that "(t)his Court is firmly committed to the principle that periodic or continuing alimony is terminated upon the death or remarriage of the wife." **Id.** at 1344. (citations omitted). Further, while the payments in the present case do technically cease upon the death of Dr. McDonald, they are for all practical purposes continued by the payment of the life insurance proceeds as set forth in the Agreement.

¶19. Based on these facts, it would be manifestly unjust for this Court to find that the payments constituted periodic alimony based on a minor deviation from the traditional nature of lump sum alimony. The payments agreed to by the parties in **East** clearly deviated from traditional lump sum alimony to a much greater extent than the payments in the present case and were not even designated as being "lump sum alimony" as in the present case. Therefore, the minor deviation from traditional lump sum alimony agreed to among the parties is insufficient to override their clear intent that the payments constitute non-modifiable lump sum alimony.

¶20. This Court recently reaffirmed in **Hubbard v. Hubbard**, 656 So.2d 124, 130 (Miss. 1995) that:

> We do not disturb our holding in which this Court has stated that `[a] fixed and certain sum of money which is due and payable over a *definite period of time* is clearly alimony in gross, or lump sum alimony, and not periodic alimony. *citing* **Holleman v. Holleman**, 527 So.2d 90, 92 (Miss. 1988), *citing* **Wray**, 394 So.2d at 1345.

Dr. McDonald argues that the payments in the present case are not fixed in the event that he dies while owing more than $250,000 in alimony, given that Carrie is entitled to a maximum $250,000 in insurance proceeds upon Dr. McDonald's death. Nevertheless, the Agreement provides that Dr. McDonald is liable for the fixed amount of $660,000 in all other circumstances, and Carrie had very legitimate reasons to desire to substitute insurance proceeds for a theoretical legal right to recover from Dr. McDonald's estate.

¶21. Carrie argues persuasively that a theoretical legal right to the remaining alimony payments upon the death of Dr. McDonald would be of little benefit if Dr. McDonald's estate were unable to pay said amounts. The record reveals that, in the years following the divorce, Dr. McDonald's estate would have clearly been insufficient to satisfy the alimony debt owed to Carrie, given his limited assets and dramatically reduced income. Accordingly, Carrie was faced with the risk that, under traditional lump sum alimony provisions, she would have a fixed right to recover from Dr. McDonald's estate upon his death, but that said right would be worthless given his limited financial means during his residency. Under these circumstances, it is understandable that Carrie wished to substitute the "bird in the hand" of a potentially lesser amount of life insurance proceeds for an unenforceable right to collect from Dr. McDonald's estate upon his death.

¶22. Accordingly, this Court finds that the mere fact that the payments were to cease upon the death of Dr. McDonald is insufficient to override the clear intent expressed by the parties that the payments were to constitute non-modifiable lump sum alimony. The Chancellor is accordingly affirmed on direct appeal in his finding that the payments constituted lump sum alimony and in refusing to modify said payments based on considerations of substantive law.

## IV. CROSS APPEAL

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN AWARDING RELIEF TO DR. McDONALD UNDER MRCP 60(b)(6)?

¶23. Having denied Dr. McDonald's Motion for Modification of Final Judgment, the Chancellor nevertheless granted Dr. McDonald leave to file a Motion for Relief from the judgment pursuant to Mississippi Rules of Civil Procedure 60(b)(6). MRCP 60(b)(6) provides that:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

> (6) any other reason justifying relief from the judgment.

¶24. The Chancellor granted Dr. McDonald's 60(b)(6) motion, reducing his payments from $5,000/month to $2,750/month for the duration of Dr. McDonald's residency, with the $2,250/month difference deferred until the end of the lump sum period with interest. The Chancellor also awarded $4,095 in attorney fees to Carrie, which payments were also deferred "until the end of the period over which movant is required to pay lump sum alimony." Carrie argues that "the effect of the awarding of relief under Rule 60 in this instance has been to allow a rule of procedure to overturn substantive law and fifty or more years of precedence holding that lump sum alimony is not modifiable." This Court agrees that the Chancellor's rationale for the modification was in error, given

that the Chancellor himself acknowledged that the payments in question constituted non-modifiable lump sum alimony under the substantive law of this State.

¶25. There are clear limitations to the discretionary powers of a trial judge, and one such limitation is that a judge may not utilize the rules of procedure to do that which the substantive law of this State forbids him to do. The Chancellor obviously did not feel that the substantive law of our state gave him the discretion to make what he considered to be the fair ruling in this case, but utilizing the rules of procedure to circumvent the law was improper, regardless of the equitable considerations which were clearly of concern to the Chancellor.

¶26. Implicit in Rule 60(b)(6) is that final judgments may be modified only when the substantive law does not preclude the modification of said judgments. This Court has endorsed the use of Rule 60 for modification of child support orders, but orders for child support, unlike orders for the payment of lump sum alimony, are always subject to modification under our jurisprudence. *Gambrell v. Gambrell*, 644 So.2d 435 (Miss. 1994).

¶27. Having established that the Chancellor was in error in granting the 60(b)(6) motion, this Court nevertheless has the option of holding that the modification was permissible under the substantive law of this state and thus affirming the ruling on different grounds. In the present case, the Chancellor merely provided a means for the temporary *deferral* of a portion of the installments owed under the agreement, with a clear provision for the repayment of the deferred portion of the installments in the future, with interest. Given that the total sum of $660,000 owed by Dr. McDonald was not reduced by the Chancellor, it is arguable that the Chancellor's ruling was not contrary to the general principles of lump sum alimony, even though the payment schedule was altered.

¶28. This Court is mindful of the equitable considerations which clearly motivated the Chancellor in his commendably fair, albeit legally erroneous, ruling. Dr. McDonald clearly did not return to medical school in order to deny alimony to his wife, and the Chancellor's ruling provided for a means for Dr. McDonald to pursue his residency, while at the same time providing for Carrie's support. Moreover, the Agreement itself does not on its face forbid the modification made by the Chancellor, given that said Agreement merely provides that the *total sum* of $660,000 may not be modified, and does not explicitly prohibit modification of the installment payments.

¶29. Given the limited nature of the Chancellor's modification and the fact that said modification is not forbidden under the terms of the Agreement, this Court is asked to distinguish this case from the previous cases dealing with lump sum alimony. However, we elect not to do so, given that the record indicates that Dr. McDonald had been considering pursuing a residency in neurology for a number of years prior to his agreement in question. Accordingly, this Court concludes that Dr. McDonald's residency would not qualify as a "substantial change in circumstances" which would entitle him to a modification even if this Court were to hold that the substantive law permitted such a modification.

¶30. The Chancellor's ruling is therefore reversed and rendered on cross appeal, and Dr. McDonald is liable for the deferred payments with interest immediately, rather than at the end of the ten year lump sum period as set forth in the ruling.

¶31. **DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: REVERSED AND RENDERED.**

**SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J.; McRAE, J., JOINS IN RESULT ONLY.**

**DAN LEE, CHIEF JUSTICE, DISSENTING:**

¶32. I respectfully dissent from the majority's decision. The role of the chancellor is to "do equity," but today's ruling binds the chancellor to an inflexible standard which prevents him from operating within the range of discretion properly granted him by virtue of Miss.R.Civ.P. 60(b)(6). It is an unfortunate occasion when a majority of this Court notes that a chancellor has reached a fair decision and in so doing has adequately protected both parties, only to reverse the ruling as an abuse of discretion and destroy the equitable balance struck by the chancellor. This is clearly the result of this Court's decision. As the majority states, "[t]he Court is mindful of the equitable considerations which clearly motivated the Chancellor in his commendably fair, albeit legally erroneous, ruling . . . . the Chancellor's ruling provided for a means for Dr. McDonald to pursue his residency, while at the same time providing for Carrie's support." The majority should reconsider whether the law related to the application of Rule 60(b)(6) mandates reversal of this "commendably fair" ruling.

¶33. The property settlement agreement which the court originally sanctioned, incorporated into a decree, and attempted to reopen based upon equitable considerations has proven troublesome for one reason. Though the agreement entitles Carrie to lump sum payments totaling $660,000 and thus purports to divide the "property" of the couple, the only asset of great value held by the McDonalds was Dr. McDonald's medical degree itself. In actuality, it was the income expected to be derived from his practice of medicine, rather than any tangible "property" held by the couple at the time, which was divided by the settlement agreement. If the award of alimony had been determined in the first instance by the chancellor instead of by the agreement of two parties in haste to end a marriage, the chancellor could have provided for a form of modifiable alimony based upon future events in lieu of attempting to distribute as "property" money which was not presently possessed.[1]

¶34. While parties should be free to create their own dissolution agreements in the event of divorce, the fact remains that these agreements are incorporated into the judgment of divorce and are thus provided the stamp of approval of the courts of this State. Because a judgment of the court is involved, and because parties in a rush to dissolve the marital union will not always create a workable property settlement agreement, several states have considered the range of discretion available under Rule 60(b)(6) and recognized that where the effect of the decree is to cause extreme hardship, the court retains equitable authority to reopen the judgment. In so doing, these courts have applied the same standard for providing relief under Rule 60(b)(6) which this Court has for years applied, requiring that "extraordinary circumstances" exist before the judgment can be altered in any way. *Lose v. Illinois Central Gulf Railroad Co.*, 584 So. 2d 1284, 1286 (Miss. 1991). Thus, it is apparent that it is within the chancellor's discretion to utilize Rule 60(b)(6) to reopen a judgment incorporating a property settlement, and that this court need not reverse a "commendably fair" ruling.

¶35. The courts of Delaware have applied the "extraordinary circumstances" standard under Rule 60(b)(6) and have found that the Rule allows a judge the discretion to reopen an otherwise non-modifiable property settlement incorporated into a judgment. In a recent case which summarized the approach taken by the appellate courts in that State, it was noted that

> [i]n cases where the property division has been reopened the court has focused on the percentage of change in the value of the asset. Under this rationale a 400% increase has been acknowledged as extraordinary circumstances meriting relief from the property division. Conversely, a 48% change has been held not significant enough to qualify as extraordinary circumstances.

*Troutman v. Troutman*, 1995 WL 775191, at *4 (Del. Fam. Ct. March 28, 1995) (citing *Bachtle v. Bachtle*, Del.Supr., 494 A.2d 1253 (1985); other citations omitted).

¶36. Alaska has also addressed this issue under the "extraordinary circumstances" analysis of Rule 60(b)(6). In *Lowe v. Lowe*, 817 P.2d 453, 458-59 (Alaska 1991), the Alaska Supreme Court announced four nonexclusive factors which should be considered when faced with an attempt to reopen a judgment incorporating a division of property: (1) the fundamental, underlying assumption of the dissolution agreement must have been destroyed, (2) the parties' property division must have been poorly thought out, (3) the property division was reached without the benefit of counsel, and (4) the asset in controversy must have been the parties' principal asset. All of the above elements are present in the case *sub judice* other than the element concerning the benefit of legal counsel, though this factor seems to be obviated by the fact that there is no case law in this State which speaks to the wisdom, or lack thereof, of fashioning a lump-sum property settlement from potential future earnings from a professional degree or specialized training. Also, the Alaska Supreme Court noted that the judge should have the discretion under Rule 60(b)(6) to use these standards as a mere guideline for reopening the judgment, for "the cited factors are merely illustrative, and are not intended to be an exclusive list of 'extraordinary circumstances' justifying relief under Civil Rule 60(b)(6)." *Lowe* at 485.

¶37. Finally, in consideration of the importance of the finality of the original sanctioned property settlement, which under any other circumstance would be non-modifiable, this Court should ensure that any judgment relied upon by the non-moving party cannot be modified under Rule 60. If Carrie had shown that she obligated herself financially in reliance upon the previously sanctioned settlement, and that the payment schedule in the original agreement could not be altered without adversely affecting her own commitments, the chancellor would not have been within his discretion in reopening the judgment under Rule 60.

¶38. From the foregoing, it is apparent that other courts have found that Rule 60(b)(6) can be used by a judge to reopen a judgment incorporating a property settlement, and that the judge's equitable authority to shape the decrees of the court is not completely destroyed by virtue of the original contents of a decree. We have described Rule 60(b)(6) in the past as "a grand reservoir of equitable power to do justice in a particular case," and the majority should not now reduce Rule 60 to a mere trickle of authority incapable of providing meaningful relief. *Accredited Surety and Casualty Co., Inc. v. Bolles*, 535 So. 2d 56, 60 (Miss. 1988); *Bryant, Inc. v. Walters*, 493 So. 2d 933, 939 (Miss. 1986). If the interests of both parties can be adequately protected, nothing within Rule 60 bars a

court of equity from adjusting the terms of a judgment which has the sanction and power of the court behind it but which has proven oppressive.

¶39. The chancellor was well within his discretion in considering the circumstances before him "extraordinary" and therefore grounds to reopen and slightly alter the judgment. After the unusual lump-sum agreement was entered into and incorporated into the divorce decree, Dr. McDonald was offered the opportunity to increase his own knowledge of medicine through the neurology program. Upon taking the opportunity and entering the program, his income fell drastically, though he attempted to continue to meet the $5,000 per month obligation to Carrie by moonlighting in emergency rooms. Testimony before the chancellor suggested that Dr. McDonald was working so many hours each week that the workload was beginning to take a heavy physical and mental toll, but that the residency program would be completed in three years and that full payments could then resume.

¶40. Presented with these facts, the chancellor rendered a decision which adequately protected both parties under Rule 60(b)(6). He did not reduce the total amount due, and even added interest of 8% to the payment obligation after the residency in order to ensure that Carrie was protected. By reducing the payments to $2,750 per month during the period of the Doctor's residency, the chancellor ensured that Dr. McDonald -- who the court obviously felt was on the verge of possible collapse -- was able to continue making progress towards payment of the lump-sum amount and yet also enabled to continue to function physically. The court explained to Carrie that, though the original agreement provided that she would be entitled to the remainder of the $660,000 from the estate of Dr. McDonald in the event of his untimely demise, the record made it quite apparent that his estate was not substantial enough to satisfy such a debt. Thus, as the chancellor pointed out, it would do no good to kill the goose that was laying the golden egg. In an extremely difficult situation, the chancellor found a way to strike a balance which adequately protected the health and chosen career of one party and the future financial interests of the other.

¶41. Rule 60(b)(6) is an adequate device to allow, on such rare occasions, the opening of a final judgment to avoid a harsh effect. Reversal of the chancellor's decision places Dr. McDonald, during his three-year study in the neurology program, in the position of risking his health while moonlighting in order to make the full payments to Carrie, or else foregoing the moonlighting and then risking contempt charges and a possible jail sentence for failure to make the full payments. The goal of the chancery court should be to craft orders which facilitate the best interests of divorcing parties, and allow them to begin separate lives. The effect of today's decision is to penalize Dr. McDonald for attempting to further his education and earning potential, and could conceivably have the end result of depriving Carrie of the only possible source of the $660,000 to which she is entitled. Where such a rare situation can be remedied, and both former spouses adequately protected, a court of equity should see that this is done. The chancellor did so, was within the discretionary authority granted him by virtue of the "grand reservoir of equitable power" provided by Miss.R.Civ.P. 60(b)(6), and his "commendably fair" decision need not be reversed. Accordingly, I dissent.

**MILLS, J., JOINS THIS OPINION. McRAE, J., JOINS THIS OPINION IN RESULT ONLY.**

1. In *McNally v. McNally*, 516 So. 2d 499 (Miss. 1987), this Court said, "[t]oday's case presents a question arising with increasing frequency: one spouse in a new marriage attends professional or

graduate school while the other earns the couple's keep. After graduation but before the marriage begins to reap the economic benefits of this professional training, the parties get divorced . . . . In such cases, we direct that the Chancery Court generally should retain jurisdiction of the alimony feature of the case and pursuant thereto entertain subsequent application for award of alimony." *Id*.