ROBERTS, J.,
for the Court:
¶ 1. This appeal requires this Court to address whether a provision in a property-settlement agreement is alimony subject to termination upon the remarriage of the alimony recipient. Steve Hollis and Myra Hollis Baker were granted a divorce on April 17, 2003, on the ground of adultery. Hollis and Baker entered into a written agreement disposing of the issues of child custody, child support, alimony, and division of property. This agreement was approved by the Oktibbeha County Chancery Court as adequate and sufficient, and it was incorporated into the divorce decree. The agreement required Hollis to pay $500 per month in child support and $500 per month in alimony to Baker. The chancery court later reduced the alimony amount from $500 to $350 on July 17, 2006, based upon a material change in circumstances. Then, on December 7, 2010, Hollis filed a petition to terminate child support and alimony because Baker had remarried in April 2010 and their daughter had reached the age of twenty-four. The chancery court denied Hollis’s request to terminate alimony because the provision in the parties’ agreement did not specifically state that the alimony obligation terminated upon Baker’s remarriage. Hollis filed a motion for reconsideration and Baker filed a cross-motion for reconsideration. The *1062 chancery court denied both motions. Aggrieved by the chancery court’s decision, Hollis executed the current appeal. Baker cross-appealed.
FACTS AND PROCEDURAL HISTORY
¶ 2. Hollis and Baker were married on August 24, 1973. Together, they had one daughter named Stephanie Holly Hollis (Holly) born in May 1985. On November 7, 2002, Baker filed a complaint for divorce from Hollis on the ground of adultery. Hollis answered Baker’s complaint and filed a cross-complaint for divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences.
¶ 3. On April 17, 2003, the chancery court entered a final decree of divorce granting Baker a divorce from Hollis on the ground of adultery. The chancery court approved and incorporated the parties’ proposed written agreement disposing of child custody, child support; alimony, and property division into the final decree. The agreement gave full physical and legal custody of Holly to Baker, with Hollis receiving reasonable visitation rights. Hollis was ordered to pay $500 per month in child support and to pay for Holly’s health insurance. Both obligations terminated when Holly finished college, turned twenty-four, or was otherwise emancipated, whichever occurred first. He was also ordered to pay Baker’s health insurance “until she remarrie[d].” Baker was required to pay Holly’s college tuition while she was a freshman and sophomore, with Hollis responsible for her remaining college years. In regard to alimony, the agreement stated that Hollis would pay Baker $500 per month in alimony. He would be required to “increase alimony to $1,000 ... per month beginning the month after child support ceases, to continue for the life of [Baker].” If Baker died, Hollis would be required to pay “these $1,000 per month payments ... to the minor child” until his death. Hollis was also ordered to establish a trust for Holly and to fund the trust with $25,000 from the sale of his father’s property. In addition, Hollis was to pay Baker $25,000 from the sale of his father’s property. The parties’ marital property, such as cars, retirement accounts, and personal belongings, was also distributed by the agreement.
¶ 4. Hollis filed a petition for modification on October 21, 2005, requesting that he no longer pay Baker alimony, provide her health insurance, or pay for Holly’s college tuition. His petition claimed that he was unable to afford the payments because there was a “substantial decrease in his income which has hampered his ability to pay his financial obligations;” therefore, his income had significantly decreased. On July 17, 2006, the chancery court made a judicial determination that these monthly spousal support, payments were alimony and reduced Hollis’s monthly alimony payment from $500 to $350, but denied his remaining requests. Baker did not appeal this judgment modifying alimony. The chancery court also found in this July 17, 2006 decree that Hollis owed Baker $6,082 for past due medical bills and that he had failed to establish a $25,000 trust for Holly. Hollis was found in contempt for failing to establish the trust. Hollis filed bankruptcy on July 26, 2006, and was discharged on November 29, 2006.
¶ 5. Hollis again failed to fulfill his obligation to pay Baker $6,082 in medical bills, $5,292 in health-insurance payments, $1,201.14 and $1,280.19 in other medical expenses, $1,200 in attorney’s fees, and $25,000 for Holly’s trust. Baker filed a petition to find Hollis in contempt. Hollis contended that his filing of bankruptcy discharged those debts; however, the *1063 chancery court disagreed and, on May 21, 2007, found Hollis was required to pay Baker the above amounts plus $750 in attorney’s fees. Holly also received a judgment against Hollis for the $25,000 owed to her trust.
¶ 6. On December 7, 2010, Hollis filed a petition to terminate child support and alimony. Holly had turned twenty-four years old on May 28, 2009, and Baker had married Stan Baker in April 2010. According to his petition, Hollis claimed that the child-support payments were still being automatically deducted from his paycheck even though Holly had reached the age of twenty-four the year before. He requested the chancery court enter an order terminating his child-support obligation and that he receive a credit of $9,000 for his overpayment. The credit would be used against the balance of what he owed to Baker from the May 21, 2007 judgment of $15,805.33. He also requested the chancery court approve an arrangement that he pay Baker $250 per month until the remainder of the judgment against him was paid off. Lastly, he requested that his alimony obligations be terminated since Baker had remarried and no longer required spousal support from him. Baker filed a counterclaim requesting the chancery court find Hollis in contempt for his failure to comply with the May 21, 2007 judgment.
¶ 7. The chancery court issued its order on April 11, 2011. Hollis was given credit for $5,500 in child-support payments and $2,500 in payments he had made toward the judgment. Hollis was left with a balance of $7,805.33 plus interest. The chancery court terminated his obligations to pay child support but not his obligation to pay Baker alimony. As for Hollis’s alimony payments, the chancery court found that Hollis should continue paying $850 in alimony because he and Baker had intended for the alimony to be extended beyond possible remarriage by stating in their agreement that the payments would last until Baker’s death. Hollis was found in contempt for his failure to pay alimony and other expenses; therefore, he was also required to pay Baker $1,500 in attorney’s fees, to be paid within sixty days of the order.
¶ 8. Both Hollis and Baker filed motions for reconsideration. Hollis sought reconsideration on the issue of alimony; Baker sought reconsideration on the issue of the amount owed to her under the judgment. She alleged that Hollis owed her $13,305.33 and not $7,805.33 because he should not have received credit for child-support payments. The chancery court denied both motions on May 17, 2011. Hollis executed his notice of appeal on June 6, 2011, and Baker executed her notice of cross-appeal on June 17, 2011.
¶ 9. On appeal, Hollis raises the following issue: “[Whether the chancery court] erred in concluding that [Hollis] had an obligation of support to his former wife, [Baker], through periodic alimony payments after the time that she had remarried to another husband.” Baker’s issue on cross-appeal is whether the chancery court erred in calculating the past-due payments owed to her.
STANDARD OF REVIEW
¶ 10. A chancery court’s final judgment receives much deference on review from an appellate court. Holley v. Holley, 892 So.2d 183, 184 (¶ 6) (Miss.2004). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, [was] clearly erroneous[,] or [applied] an erroneous legal standard[.]” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) *1064 (Miss.2002) (quoting Kilpatrick v. Kilpatrick, 782 So.2d 876, 880 (¶ 13) (Miss.1999)).
ANALYSIS
I. Alimony
¶ 11. Over fifteen years ago, the Mississippi Supreme Court urged parties, attorneys, and judges to carefully draft property-settlement agreements to avoid future confusion and litigation over ambiguously drafted provisions. McDonald v. McDonald, 683 So.2d 929, 932-33 (Miss.1996). In McDonald, the supreme court stated:
[ The] freedom to contract is not absolute, however, and parties and judges should be mindful of the traditional characteristics of lump[-]sum and periodic alimony in drafting their agreements and decrees for alimony payments. When possible, it would be advisable for parties and judges to pattern their alimony agreements and decrees for non-modifiable lump[-]sum alimony according to established precedent of this Court.
Id. at 932. The case before us is illustrative of the need for clear and careful drafting of property-settlement agreement provisions, particularly as these provisions relate to periodic monthly payments being considered by the parties as alimony or as a contractual division of marital property.
¶ 12. Hollis’s sole issue on appeal involves the chancery court’s finding that the provision in the agreement regarding alimony required him to continue paying Baker alimony even after she remanded. According to Hollis, this alimony provision is permanent periodic alimony, making it subject to termination upon remarriage of the alimony recipient.
¶ 13. There are four types of alimony available in Mississippi: periodic, lump sum, rehabilitative, and reimbursement. West v. West, 891 So.2d 203, 212 (¶ 20) (Miss.2004). “As a general rule, periodic alimony has no fixed termination date; instead, it automatically terminates at the death of the obligor or the remarriage of the obligee.” Id. at (¶ 21) (emphasis added). There is no dispute that permanent periodic alimony is modifiable and terminable even within the context of a property-settlement agreement. See Taylor v. Taylor, 392 So.2d 1145, 1146-47 (Miss.1981); Stone v. Stone, 385 So.2d 610, 613 (Miss.1980); Hughes v. Hughes, 221 Miss. 264, 268, 72 So.2d 677, 678 (1954). Additionally, it is accepted that there are other provisions of a property-settlement agreement that are not modifiable. See McDonald v. McDonald, 683 So.2d 929, 932-33 (Miss.1996). Ultimately, the issue before us is whether the chancery court erred in determining that this provision was a property settlement provision and not permanent periodic alimony subject to termination upon remarriage of the recipient.
If 14. At issue is a portion of the agreement titled Child Custody and Property-Settlement Agreement that was signed by both Hollis and Baker prior to their divorce and incorporated into their divorce decree by the chancery court. Among other things, this agreement detailed the amount of alimony Hollis would pay Baker. Paragraph IV, subsection H of the agreement provides as follows:
[Hollis] shall pay [Baker] $500 ... in alimony per month beginning on the first day of the month after the sale of the marital home is finalized. [Hollis] will increase alimony to $1,000 ... per month beginning the month after child support ceases, to continue for the life of [Baker]. In the event [Baker] dies, these $1,000 ... per month payments shall be made to the minor child until the death of [Hollis].
¶ 15. This provision was modified by the chancery court on July 17, 2006. The *1065 chancery court stated in its July 17, 2006 decree and judgment that “the alimony [Hollis] is currently paying should be reduced from the sum of $500 ... per month, to $850 ... [per] month, effective July 1, 2006.” By modifying this provision, the chancery court acknowledged that this alimony was permanent periodic alimony and not some type of hybrid of alimony and property settlement as Baker claims. It is well settled that permanent periodic alimony is subject to modification and ceases upon the recipient’s remarriage or the payor’s death. See McDonald, 683 So.2d at 931; Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995); Bowe v. Bowe, 557 So.2d 793, 794 (Miss.1990); Wray v. Wray, 394 So.2d 1341, 1344 (Miss.1981).
¶ 16. In the dissent authored by Judge Fair, he would find that the chancellor was correct in viewing Hollis’s obligation to continue paying alimony as a non-modifiable contract obligation between the parties. To support this position, he cites to In re Kennington’s Estate, 204 So.2d 444, 445 (Miss.1967) involving a settlement agreement between husband and wife that he would pay her a monthly sum until she died or was remarried and that it would be a binding obligation upon his estate. The following language was included in the provision:
[Husband] shall pay [wife $750] on June 1, 1954, and [$750] on the first day of each successive month thereafter throughout the lifetime of said [wife], or until she remarries. If she remarries, this [provision] shall thereafter be ineffective but this [provision] shall not be affected by the death of [husband]. [Husband] binds himself, his heirs, executors and assigns, to this covenant and obligation to her even after his death.
Id. at 445-46. In its opinion, the supreme court quoted the following language of the chancery court’s opinion: “The attorneys for the respective parties understood the legal differences between alimony and a property settlement and carefully and skillfully avoided the death of the then husband having any affect on the agreed payment each month.... In the [above-quoted provision] of this agreement[,] there is no doubt as to the intention of the parties.” Id. at 447. The supreme court then stated that “[i]t was the manifest intention of the parties that the obligation to make the payment should survive the death of [husband].” Id. at 449. We submit that the facts of the current case are easily distinguishable from the facts in Remington primarily on the ground that the provision in the current case is completely silent as to whether alimony terminates upon her remarriage. In the above quoted language of Remington, the provision explicitly states that it is the intent of the parties to have the $750 payments continue beyond the husband’s life. Thus, it was abundantly clear that as long as wife did not remarry, she was entitled to payment by either husband or husband’s estate for the remainder of her life.
¶ 17. The provision in the current case is simply silent on whether Hollis would continue paying Baker alimony after her remarriage. Moreover, in the present case, a prior judicial determination that the monthly payments for support were alimony subject to modification had been made by the chancellor, a determination from which Baker did not appeal. Such circumstance did not exist in Remington. Without such an explicit provision requiring Hollis to continue alimony payments beyond Baker’s remarriage, we decline to require Hollis to continue such payments. Baker has a new husband capable of providing adequate spousal support.
¶ 18. Because this type of alimony terminates upon the subsequent marriage of the recipient, Hollis’s obligation to contin *1066 ue paying Baker alimony was terminated when Baker remarried in April 2010; therefore, we reverse and render the chancery court’s decision on this issue and the finding that Hollis was in contempt for his missed alimony payments after Baker remarried.
II. Past-Due Payments
¶ 19. In her cross-appeal, Baker submits that the chancery court erred by reducing the judgment Hollis owed her. The chancery court reduced the $15,805.33 judgment against Hollis by $5,500 and $2,500, making the total he owed $7,805.33 plus four percent interest per year until the judgment is paid. We find that the chancery court erred in calculating the credit Hollis received; therefore, we reverse and remand this matter to the chancery court for a determination of the proper amount Hollis may owe on the judgment.
¶ 20. According to the original agreement, Hollis was required to pay $500 in child support until Holly turned twenty-four, finished college, or was emancipated, whichever occurred first. Also, the agreement required that Hollis pay Baker $500 in alimony per month, and alimony would increase to $1,000 per month after his child-support obligations ended. The chancery court subsequently modified Hollis’s alimony payment from $500 per month to $350 per month until his child-support obligations ended on May 28, 2009. However, the language requiring him to pay Baker an additional $500 in alimony once child-support obligations ended was not modified. Under the agreement, Hollis should have paid Baker a total of $850 per month from June 2009, the end of his child-support obligations, until April 2010, Baker’s remarriage. He did not do so.
¶ 21. Instead of paying Baker $850 per month, Hollis paid her $750 per month. Of the $750, $500 was withheld from Hollis’s paycheck as child support. The other $250 was to pay toward the $15,805.33 judgment. But according to the provision in the parties’ agreement, the amount Hollis owed Baker in alimony would increase upon the ending of his child-support obligation; therefore, it appears to us that the $5,500 credit was granted in error. The $500 per month, even though withheld from his cheek as child support, was still owed by Hollis under the alimony provision. Granting Hollis a $500 credit for those payments would result in Baker only receiving $250 per month to go toward the judgment and nothing for alimony during the period of ten months after Holly turned twenty-four and before Baker remarried. Moreover, it is impossible for us on appeal to determine how much, if any, alimony Hollis has continued to pay Baker since the entry of the decree entitling him to credit for those amounts as well.
¶ 22. Therefore, we reverse and remand this issue for the chancery court to determine the proper amount of money Hollis may owe Baker.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS REVERSED AND RENDERED ON DIRECT APPEAL AND REVERSED AND REMANDED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., GRIFFIS, P.J., AND MAXWELL, J., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J.; FAIR, J., JOINS IN *1067 PART. FAIR, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES AND ISHEE, JJ. JAMES, J., NOT PARTICIPATING.