# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00873-SCT

*JAMES MALCOLM HARRIS, JR.*

*v.*

*KIMBROUGHLY (ELAM) HARRIS*

DATE OF JUDGMENT: 04/10/2007
TRIAL JUDGE: HON. MITCHELL M. LUNDY, JR.
COURT FROM WHICH APPEALED: DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT: MALENDA HARRIS MEACHAM
L. ANNE JACKSON HODUM
ATTORNEYS FOR APPELLEE: M. W. ZUMMACH
JOSEPH M. SPARKMAN
NATURE OF THE CASE: CIVIL - DOMESTIC RELATIONS
DISPOSITION: AFFIRMED - 08/14/2008
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from an order of the DeSoto County Chancery Court on a petition for contempt filed by Kimbroughly (Elam) Harris ("Kimbroughly") and counter petition for sanctions filed by James Malcolm Harris, Jr. ("James").  The petition for contempt was originally filed in response to James's alleged failure to pay property taxes on certain property distributed in the parties' recent divorce.  The chancellor held that the property taxes were marital debt and that James was responsible for the taxes for the time period of January 1, 2006, through December 20, 2006.  The court also held that the counter petition was not well taken and denied it.

¶2.     On February 15, 2006, James filed for divorce. On August 30, 2006, a temporary order was entered *nunc pro tunc* by the chancellor, pursuant to a hearing held on June 29, 2006. In the temporary order, James agreed to pay reasonable maintenance associated with the marital home at 8935 Oakwood Lane, Olive Branch, MS 38654, including taxes, insurance and care for the pool and grounds.

¶3.     On December 12, 2006, the DeSoto County tax collector mailed a tax statement to the marital home. The statement included a tax bill in the amount of $2,777.85 for the property taxes on the marital home which had accrued in 2006. The statement noted that payment would be considered delinquent after February 1, 2007. Kimbroughly delivered the statement to James's office on or around December 17, 2006.

¶4.     On December 19, 2006, a settlement conference was held in which James and Kimbroughly agreed to the terms of a Property, Child Support and Child Custody Agreement.[1] The agreement was signed, executed and acknowledged by both James and Kimbroughly, and then filed with the chancery court the following day, December 20, 2006. The agreement was approved by the chancery court and incorporated into a decree of divorce that was also signed and filed on December 20, 2006. On January 2, 2007, James executed a quit claim deed conveying the marital home to Kimbroughly pursuant to the divorce decree.

¶5.     Near the end of January 2007, when Kimbroughly went to pick up the first $100,000 installment of the agreed-upon settlement, the property tax statement was also returned to her. On January 26, 2007, Kimbroughly demanded that James pay the 2006 property taxes

---

[1] There is no evidence as to whether James actually received the tax statement before the conference.

on the marital home. James made no such payment, and on February 20, 2007, Kimbroughly filed a petition for contempt based on James's refusal to pay the 2006 property taxes on the marital home.

¶6.   The issue was heard by the chancellor on April 10, 2007, and a final order was issued *nunc pro tunc* on May 7, 2007. The order required James to pay the property taxes of the marital estate prorated from January 1, 2006, through December 20, 2006. It is from this order that James appeals.

¶7.   The issues on appeal are:

    **I.   Whether the chancellor erred in his interpretation of the property settlement agreement as incorporated in the divorce decree.**

    **II.   Whether James should be subject to sanctions pursuant to Rule 38 of the Mississippi Rules of Appellate Procedure for filing a frivolous appeal.**

## STANDARD OF REVIEW

¶8.   This Court has long held that it "will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Bell v. Parker***, 563 So. 2d 594, 596-97 (Miss. 1990). If a chancellor's findings are supported by substantial credible evidence in the record, this Court will not reverse. ***Huggins v. Wright***, 774 So. 2d 408, 410 (Miss. 2000) (citing ***Weeks v. Thomas***, 662 So. 2d 581, 583 (Miss. 1995)). However, a property settlement agreement is a contractual obligation. ***East v. East***, 493 So. 2d 927, 931-32 (Miss. 1986). Contract interpretation, as a question of law, is reviewed de novo. ***Warwick v. Gautier Utility Dist.***, 738 So. 2d 212, 215 (Miss. 1999).

**DISCUSSION**

**I.** **Whether the Chancellor Erred in His Interpretation of the Property Settlement Agreement as Incorporated in the Divorce Decree.**

¶9. James argues that the chancellor did not interpret or enforce the property settlement agreement as a contract. He further argues that nothing in the plain language of the property settlement, as incorporated into the final divorce decree, could be viewed as agreeing to assume a prorated share of any debt. James contends that the language "Wife agrees to assume liability for all debts on the aforesaid properties," is completely unambiguous, or if seen as ambiguous, should be construed against Kimbroughly.

¶10. This Court has found that "[w]here terms of a contract are ambiguous, the contract will be interpreted in a reasonable manner. We held that it is a question of law for the court to determine whether a contract is ambiguous. In the event of an ambiguity, the subsequent interpretation presents a question of fact for the trier of fact which we review under a substantial evidence/manifest error standard." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 283 (Miss. 2005) (internal citations omitted). *Abernathy* also sets out this Court's three-tiered approach to contract interpretation:

> First, the 'four corners' test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary canons of contract construction. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

*Id*. at 284 (internal citations omitted).

4

¶11.    The first step of the analysis is to look at the plain language of the contract. The underlying issue here is whether James or Kimbroughly is responsible for the 2006 property taxes on the marital home pursuant to the property settlement agreement as incorporated in the divorce decree. In pertinent part, the property settlement agreement states, "Husband agrees that Wife shall have exclusive use, title and possession of the parties property located at 8935 Oakwood Lane, Olive Branch, MS 38654. . . Wife agrees to assume liability for all debts on the aforesaid properties." Shortly thereafter the property agreement also states that "[t]he parties agree that the Husband shall be responsible for any and all marital debt accumulated during the marriage." The ambiguity lies in the term "debt." The property settlement agreement does not directly address the issue of the 2006 property taxes on the marital home.

¶12.    The second step of the analysis is to apply the discretionary "canons" of contract construction. One such rule of construction is that "specific language controls over general inconsistent language in a contract." *Union Planters Bank, N.A. v. Rogers*, 912 So. 2d 116, 120 (Miss. 2005). James argues that the paragraph directly dealing with the debts on the marital estate controls over the paragraph in which he is generally assigned all marital debts. However, the issue is in the ambiguity of the term "debt," not in which provision applies. Construing one provision to control over another does not address this ambiguity.

¶13.    Another rule of contract construction is that "when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it." *Banks v. Banks*, 648 So. 2d 1116, 1121 (Miss. 1994). James contends that provision should be interpreted against Kimbroughly because her attorney drafted the part of the agreement

5

that stated the wife would be responsible for debts on the marital home. While James's attorney did make the statement that "Mr. Zummach helped fashion that particular paragraph" in his closing argument, there is no evidence in the record that this is the case.

¶14. The final step of the analysis allows the chancellor to incorporate extrinsic or parol evidence in the event the contract still is not clear. In this case the chancellor looked to the temporary order which stated that James indicated that he would be responsible for "reasonable maintenance associated with the marital home at 8935 Oakwood Lane, Olive Branch, MS 38654, including *taxes* and insurance and care for the pool and grounds." (Emphasis added). The chancellor determined that the taxes on the marital home were marital debt and as such James would be responsible for them up until the date the divorce was made final. James argues that, even under the temporary order, he would not be responsible for the taxes on the marital home because the taxes were not in fact due until February 1, 2007, which was after the divorce was finalized and the property was signed over to Kimbroughly. However, even though the taxes were not due until this date, the taxes had accrued the previous year, prior to the divorce's being final.

¶15. We agree with the chancellor's legal conclusion that the contract was ambiguous. Also, based on the facts presented above, there is substantial evidence to support the chancellor's resolution of the contract's ambiguity, and, as such, this Court affirms.

II. **Whether James Should Be Subject to Sanctions Pursuant to Rule 38 of the Mississippi Rules of Appellate Procedure for Filing a Frivolous Appeal.**

¶16. Kimbroughly argues that James should be sanctioned for filing a frivolous appeal. This Court has equated the Rule 38 frivolousness to the definition of the same concept in

6

Mississippi Rule of Civil Procedure 11. ***Roussel v. Hutton***, 638 So. 2d 1305, 1318 (Miss. 1994). The question is whether a reasonable person would have any hope for success. This Court does not find the arguments presented on appeal frivolous, and therefore finds sanctions inappropriate.

**CONCLUSION**

¶17.    Based on the foregoing reasons, this Court affirms the judgment of the DeSoto County Chancery Court.

¶18.    **AFFIRMED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  LAMAR, J., NOT PARTICIPATING.**