IRVING, P.J.,
for the Court:
¶ 1. On October 30, 2012, the Pearl Municipal Youth Court adjudicated J.C.M.[1] a delinquent child and ordered that he serve ninety days in the Rankin County Juvenile Detention Center with supervised probation thereafter. Feeling aggrieved, J.C.M. appeals and argues that the youth court erred by not providing specific findings of fact pursuant to Mississippi Code Annotated section 43 — 21—605(l)(k) (Supp. 2013) and by imposing an unreasonable and inappropriate disposition.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On August 20, 2012, twelve-year-old J.C.M. touched a female classmate’s breast during a physical education (P.E.) class at Pearl Junior High School in Pearl, Mississippi. The female classmate, B.G., reported J.C.M. to school authorities. J.C.M. was immediately suspended, taken to and detained at the Rankin County Juvenile Detention Center, and charged with disorderly conduct. He was released to his parents and placed on house arrest on August 22, 2012.
¶ 4. On October 30, 2012, the youth court held an adjudicatory hearing. During the hearing, the victim, the victim’s friend, and two of J.C.M.’s friends testified to their recollection of the events of August 20, 2012. B.G. testified that on August 20, 2012, she and her friend, B.S., were walking along the track in front of J.C.M. and his group of friends during P.E. class. B.G. stopped walking because her ankles started hurting, causing B.S., J.C.M., and his friends to walk ahead of her. According to B.G., J.C.M. approached her and introduced himself. While B.G. was talking to J.C.M., an unknown student brushed by B.G. Feeling that the student had gotten too close to her, B.G. commented that the student had gotten “too close to [her] breast[.]” When J.C.M. asked her what she said, she responded:
I was, like, nothing. He was, like, what did you say? Did you just say that you just got pushed in your breast, and I was, like, yeah. And then — and I said I don’t let anybody get close to me or nothing or let anybody touch me or look or anything, and he just started staring at me.... And then — and then he said the “D” word and said those things are huge and then he grabbed me after he was staring at me.
B.G. stated that she did not think J.C.M. touched her by accident and that she was offended by J.C.M. touching her in that manner. After J.C.M. touched her breast, B.G. punched J.C.M. and later told her teacher about the incident.
¶ 5. B.S. testified that when B.G.’s ankle started hurting, she walked ahead of B.G. to talk with another group of friends. When she finished talking with her friends, she turned around and went back to walk with B.G. When she got back to where B.G. was on the track, B.G. was talking with J.C.M. B.G. “told [J.C.M.] that, you know, that he can’t touch them, can’t, you know, look, and then that’s when it happened.” She was sure that she saw J.C.M. grab B.G.’s breast, and she saw B.G. hit J.C.M. in response.
*212 ¶ 6. J.G., a Mend of J.C.M.’s, testified that he was on the track during the day of the incident. He stated that he saw J.C.M. “touch” B.G. on her breast, and that he did not think that it was an accident. J.G. stated that he did not hear any conversation between B.G. and J.C.M. before J.C.M. touched B.G.’s breast.
¶ 7. J.H., a friend of J.C.M.’s, also testified at the adjudicatory hearing. J.H. stated that J.C.M. “came over and talked about how he hit [B.G.] in the breast and she was mad.” J.H. testified that J.C.M. was not the kind of person that would walk around hitting people. However, he did believe that J.C.M. hit B.G., just not on her breast.
¶8. J.C.M. testified that he did not touch B.G. on her breast. He stated that he was walking the track alone when B.G. approached him and asked him his name. According to J.C.M., B.G. hit him in the stomach and he “pushed her on her shoulder.”
¶ 9. The youth court adjudicated J.C.M. a delinquent child. The court stated that J.C.M. showed “absolutely no remorse” and that the court took J.C.M.’s lack of remorse into account when determining the disposition. The court ordered that J.C.M. spend ninety days in the detention center and be placed on supervised probation once released from the detention center, stating that the length of J.C.M.’s probation “depends on how he behaves.” J.C.M.’s attorney filed an emergency motion, requesting that J.C.M. be released from detention and placed with his parents. The youth court held a hearing on the motion and heard additional testimony from J.C.M., his parents, his middle-school principal, and his pastor. After the hearing, although still harboring some lingering doubts as to J.C.M.’s “rehabilitation and the safety of the community[,] particularly for the safety of [J.C.M.’s] victim and those witnesses that testified against [him],” the court ordered that J.C.M. be released from detention. J.C.M.’s remaining detention time was
suspended subject to (a) compliance with the terms of probation; (b) compliance with the terms of house arrest until released from house arrest by this Court; (c) successful completion of outpatient treatment; and (d) compliance with no contact, directly or indirectly, by the child or his parents with the victim and all witnesses (other than [J.C.M.’s] father and [J.C.M.’s] pastor) that testified at the adjudieat[ory] hearing.
¶ 10. As a separate issue, the City of Pearl, through its counsel, filed a motion to strike J.C.M.’s brief, alleging that the brief is highly disrespectful to and contemptuous of the youth court. See M.R.A.P. 28(1). The City additionally alleges that J.C.M.’s appeal is frivolous and requests that this Court assess damages to J.C.M.’s parents and his counsel as a result. See M.R.A.P. 38.
¶ 11. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Sanctions

¶ 12. The City requests that this Court strike J.C.M.’s brief pursuant to Rule 28(Z) of the Mississippi Rules of Appellate Procedure. Rule 28(1) provides that “[a]ny brief containing language showing disrespect or contempt for the trial court will be stricken from the files, and the appropriate appellate court will take such further action as it may deem proper.” The City also requests that this Court assess damages to J.C.M.’s parents and J.C.M.’s attorney for filing a frivolous appeal pursuant to Rule 38 of the Missis *213 sippi Rules of Appellate Procedure. When determining if an appeal is frivolous, the inquiry is an objective one that turns on “whether a reasonable person would have any hope for success.” Harris v. Harris, 988 So.2d 376, 380 (¶ 16) (Miss.2008).
¶ 13. We decline both of the City’s requests, as J.C.M.’s brief is not contemptuous or disrespectful, and J.C.M.’s appeal is not frivolous. J.C.M.’s counsel has not cast her appellate arguments in a way to suggest any disrespect for the youth court. It is clear from the arguments, however, that counsel believes that J.C.M.’s punishment was unjustifiably harsh. Additionally, in light of the youth court’s failure to give a definite term for J.C.M.’s probation, we cannot say that J.C.M.’s appeal is frivolous. Therefore, sanctions against J.C.M.’s counsel and his parents are inappropriate.

II. Specific Findings of Fact

¶ 14. This Court’s review of cases from youth court is substantially limited. In re J.M.R., 852 So.2d 601, 603 (¶ 7) (Miss.Ct.App.2002). The Mississippi Supreme Court has stated that, on appeal,
[appellate courts] consider all the evidence before the [y]outh [c]ourt in the light most favorable to the State. If the evidence so considered is opposed to the adjudication of the [y]outh [c]ourt with such force that reasonable [persons] could not have found as the [y]outh [c]ourt did beyond a reasonable doubt, [appellate courts] must reverse. On the other hand, if there is substantial evidence in the record supporting the adjudication of the [y]outh [c]ourt, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, the [y]outh [e]ourt might reasonably have ruled as it did, [appellate courts] must affirm.
In re S.B., 566 So.2d 1276, 1278 (Miss.1990) (internal citations omitted).
¶ 15. J.C.M. argues that the youth court erred by not providing specific findings of fact pursuant to section 43-21-605(l)(k) prior to entering its disposition order. Based on the reading of the statute and J.C.M.’s argument in his brief, the proper reference statute is Mississippi Code Annotated section 43-21-605(l)(i) (Supp.2013), which provides that youth courts have the option to
[o]rder the child into a juvenile detention center operated by the county or into a juvenile detention center operated by any county with which the county in which the court is located has entered into a contract for the purpose of housing delinquents. The time period for detention cannot exceed ninety (90) days, and any detention exceeding forty-five (45) days shall be administratively reviewed by the youth court no later than forty-five (45) days after the entry of the order. At that time[,] the youth court counselor shall review the status of the youth in detention and shall report any concerns to the court. The youth court judge may order that the number of days specified in the detention order be served either throughout the week or on weekends only. No first-time nonviolent youth offender shall be committed to a detention center for a period in excess of ninety (90) days until all other options provided for in this section have been considered and the court makes a specific finding of fact by a preponderance of the evidence by assessing what is in the best rehabilitative interest of the child and the public safety of communities and that there is no reasonable alternative to a nonsecure setting and[,] therefore[,] commitment to a detention center is appropriate.
*214 ¶ 16. Here, the youth court did not order J.C.M. to serve in excess of ninety days in detention. Rather, the order provided that J.C.M. serve ninety days in detention. However, the court ordered that J.C.M. be released from detention prior to the expiration of the ninety days. Therefore, we find that section 43-21-605(1)(Z) is inapplicable. J.C.M.’s argument also mentions the youth court’s failure to provide specific findings of fact regarding the following factors:
(i) The disposition order is the least restrictive alternative appropriate to the best interest of the child and the community;
(ii) The disposition order allows the child to be in reasonable proximity to the family home community of each child given the dispositional alternatives available and the best interest of the child and the state; and
(iii)The disposition order provides that the court has considered the medical, educational, vocational, social[,] and psychological guidance, training, social education, counseling, substance abuse treatment[,] and other rehabilitative services required by that child as determined by the court[.]
Miss.Code Ann. § 43 — 21—605(1)(i). Additionally, J.C.M. argues that the youth court failed to enter findings of fact regarding the factors listed in Mississippi Code Annotated section 43-21-603(3) (Supp.2013) prior to entering its disposition order. The factors include:
(a) The nature of the offense;
(b) The manner in which the offense was committed;
(c) The nature and number of a child’s prior adjudicated offenses;
(d) The child’s need for care and assistance;
(e) The child’s current medical history, including medication and diagnosis;
(f) The child’s mental health history, which may include, but not be limited to, the Massachusetts Youth Screening Instrument version 2 (MAYSI-2);
(g) Copies of the child’s cumulative record from the last school of record, including special education records, if applicable;
(h) Recommendation from the school of record based on areas of remediation needed;
(i) Disciplinary records from the school of record; and
(j) Records of disciplinary actions outside of the school setting.
Miss.Code Ann. § 43-21-603(3).
¶ 17. While the youth court’s order states that the court considered all of the above factors prior to the disposition, the court did not recite any specific facts in the order regarding its findings as to those factors. However, this was not error. Mississippi Code Annotated section 43-21-603(6) (Rev.2009) provides that the youth court is not allowed to include in its disposition order the very information that J.C.M. requests. Section 43-21-603(6) states that
[ajfter consideration of all the evidence and the relevant factors, the youth court shall enter a disposition order that shall not recite any of the facts or circumstances upon which the disposition is based, nor shall it recite that a child has been found guilty; but it shall recite that a child is found to be a delinquent child, a child in need of supervision, a neglected child[,] or an abused child.
(Emphasis added). Therefore, the youth court did not err by not including any specific facts supporting the disposition in *215 its order. Accordingly, this issue is without merit.

III. Reasonable Disposition

¶ 18. J.C.M. alleges that the youth court’s disposition was not reasonable or appropriate. The disposition order provides as follows:
This court finds that this child has shown no remorse for his actions. This [cjourt finds by a preponderance of the evidence[,] by assessing what is in the best rehabilitative interest of the child and the public safety of communities and dispositional alternatives!;,] that there is no reasonable alternative to a nonsecure setting; and therefore[,] commitment to a detention center is appropriate. The child shall be committed for ninety (90) days in the Rankin County Juvenile Detention Center with credit given for any time detained prior to adjudication. After the child has been committed to detention for forty-five (45) days (including any pre-adjudication detention), this case shall be administratively reviewed by this court and[,] at that time[,] the youth court counselor shall review the status of the youth in detention and shall report any concerns to the court. Upon the child’s release from detention, he shall successfully complete supervised probation including, but not limited to, treatment.
¶ 19. It is undisputed that while J.C.M. began serving his ninety-day detention commitment, the youth court later released him from detention and suspended the unserved portion of the ninety-day commitment. Therefore, any argument that J.C.M.’s detention was unreasonable or inappropriate is now moot due to his release from detention and the youth court’s suspension of any unserved detention time. Additionally, we find no error with J.C.M.’s terms of probation. Our supreme court has stated that
[t]he Youth Court Act gives that tribunal the power to place a child under supervision in his own home or in that of a relative under such terms as the court shall determine and direct. Although criminal probation statutes are not pertinent to juveniles, they are relevant to the basic question of specificity of formulation of the conditions of probation. A standard condition which is frequently applied is that the probationer shall maintain good behavior, or similar statements such as lawful behavior, or violate no law. Such conditions have been almost universally upheld. They are no more vague or indefinite than the condition that the juvenile stay out of all trouble. Conditions of probation are frequently broadly phrased, since the many types of appropriate causes for revocation cannot be predicted.
In re Green, 203 So.2d 470, 472 (Miss.1967) (internal citations and quotation marks omitted). Based on our supreme court’s rationale in Green, we cannot say that J.C.M.’s supervised probation after his release from detention, though not limited in time, was an inappropriate or unreasonable disposition from the youth court. Accordingly, this issue is without merit.
¶ 20. THE JUDGMENT OF THE PEARL MUNICIPAL YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. We use initials to protect the minors involved in this matter.