# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60083

United States Court of Appeals
Fifth Circuit

**FILED**
December 1, 2015

Lyle W. Cayce
Clerk

NEW ORLEANS GLASS COMPANY, INCORPORATED,

> Plaintiff - Appellee

v.

ROY ANDERSON CORPORATION,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-177

Before DAVIS, PRADO, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:*

Defendant-Appellant Roy Anderson Corp. ("RAC") appeals from the district court's denial of its motion to compel arbitration. Because we conclude that the subcontract at issue requires arbitration under these circumstances, we reverse and remand.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60083

I.    BACKGROUND

This dispute arises out of the construction of the Sea Breeze Condominiums and Resort ("Project") in Biloxi, Mississippi. The Project was owned and developed by Sea Breeze I, LLC ("Developer"), and owners of individual units belonged to the Sea Breeze Condominiums and Resort Owners' Association ("Owners' Association"). The Developer engaged RAC as its general contractor. RAC in turn engaged a number of subcontractors, including Plaintiff-Appellee New Orleans Glass Co. ("NOG"). RAC and NOG executed a subcontract dated January 27, 2005 ("RAC-NOG Subcontract"), which is central to this dispute.

Following completion of work in 2007, the Developer and Owners' Association were unhappy with the quality of the construction and/or design of the Project, and both initiated arbitration proceedings (later consolidated) against RAC and the architect. The Developer's demand sought "damages, as well as undetermined amounts for repairs to the pool, windows, curtain walls, and transfer slab," while the Owners' Association demand asserted similar claims, referring to issues with the "pool and pool deck area, windows, curtain walls, the slab and foundation and various other parts of the building . . . ."

Based on its investigation, RAC determined that the arbitration demands concerned certain of its subcontractors' work, and it filed a Third-Party Demand for Arbitration on March 7, 2014, against many of its subcontractors, including NOG, followed by a Second Amended Third-Party Demand for Arbitration on April 18, 2014. In its arbitration demand, RAC invoked the broad defense and indemnity clause of Section 19.1 of each of its subcontracts, which provides:

> To the fullest extent permitted by law, the Subcontractor covenants to defend, indemnify, save harmless, protect, and exonerate both the Contractor (its agents, employees, representatives, and sureties) and the Owner, separately and

2

severally, from any and all liability, claim, losses, suits, actions, demands, arbitrations, administrative proceedings, awards, judgments, expenses, attorneys' fees, and costs pertaining to economic loss or damages, labor disputes, safety requirements, performance or nonperformance of obligations, certifications, property rights of third parties, personal injury, bodily injury, sickness, disease, death, or damage to or destruction of property (including loss of use thereof) which are caused in whole or in part, which arise from or occur in connection with work undertaken or to be performed by the Subcontractor, its subcontractors, or the agents or employees of any of them or which arise from or occur in connection with any other act or omission relating to the Subcontractor, its subcontractors, or the agents or employees of any of them, or to this Subcontract or to the Subcontract Work. The foregoing covenants and indemnity obligations shall apply to the fullest extent permitted by law. The Subcontractor's indemnity obligation and liability to the Contractor shall extend to the maximum extent allowed by applicable law.

In addition, RAC asserted that in all of its subcontracts, each subcontractor agreed to arbitrate disputes between it and RAC. In a footnote, it explained that the RAC-NOG Subcontract "contains different dispute resolution language, but nevertheless binds [NOG] to appear in this arbitration proceeding." Specifically, RAC invoked Section 27.3 of the RAC-NOG Subcontract, which provides:

> If the Contractor has a claim or dispute involving the same general subject matter, either in whole or in part, with any third party if elected by the Contractor, the Subcontractor shall assert its claims and defenses in and shall be bound by the same forum and in the same proceeding which has jurisdiction over the claims or disputes between the Contractor and such third party.

Instead of joining the consolidated arbitration proceeding, NOG filed a Complaint for Declaratory Relief in the United States District Court for the Southern District of Mississippi. In its complaint, it summarized the same facts set out above but disputed that Section 27.3 applies here, claiming that Section 27.3 "applies in circumstances where RAC and NOG each have similar

claims against third parties, and it does not apply to claims between RAC and NOG." In NOG's reading, Section 27.3 is irrelevant to claims solely between RAC and NOG, which it asserts are governed by Sections 27.4 and 27.5 (discussed below), which require RAC and NOG to litigate claims between them unless they specifically agree to arbitrate them. NOG prayed for a declaratory judgment declaring that:

> A.    RAC and NOG did not agree to arbitrate their claims or disputes arising under the RAC-NOG Subcontract;
>
> B.    Any claims or disputes arising under the RAC-NOG Subcontract must be litigated in a court of competent jurisdiction located either in Harrison County, Mississippi, if a state court action, or in the Southern District of Mississippi, if a federal court action;
>
> C.    This Court is a court of competent jurisdiction for the purpose of litigating claims or disputes arising under the RAC-NOG Subcontract, including RAC's claim for contractual indemnity; . . .

Thus, the primary purpose of NOG's declaratory judgment is to avoid arbitration. NOG has also prayed for a declaratory judgment declaring that RAC's contractual indemnity claim is premature because RAC asserted it prior to any judgment against RAC. This appeal will determine which forum may address that question.

Soon after NOG filed its declaratory judgment action, RAC filed a Motion to Compel Arbitration and to Dismiss in the district court, re-asserting its argument that under Section 27.3 of the RAC-NOG Subcontract, NOG is required to arbitrate its dispute with NAC in the existing arbitration.

The district court denied RAC's motion. In a Memorandum Opinion and Order, the district court rejected RAC's interpretation of the RAC-NOG Subcontract and adopted NOG's. Specifically, the district court interpreted Section 27.3 to apply "when the subcontractor has a claim or dispute with a

No. 15-60083

third party," while "Section 27.4 controls when the subcontractor has a claim or dispute with the contractor."[1] Because it found no contractual basis for requiring NOG to arbitrate its dispute with RAC, it denied RAC's motion. It also stayed the proceedings in the district court pending the outcome of RAC's ongoing consolidated arbitration. RAC appealed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

"This Court reviews de novo the grant or denial of a motion to compel arbitration."[2] As the district court noted, this case falls under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, which applies to written arbitration agreements involving interstate commerce, like the RAC-NOG Subcontract in this case.[3]

> In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."[4]

---

[1] District Court Memorandum Opinion and Order Denying Defendant's Motion to Compel Arbitration and to Dismiss, No. 1:14CV177, slip op. at 6 (S.D. Miss. Jan. 22, 2015) (hereinafter "District Court Order").

[2] *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002) (citing *Webb v. Investacorp*, 89 F.3d 252, 257 (5th Cir. 1996)).

[3] District Court Order, slip op. at 3.

[4] *Webb*, 89 F.3d at 257-58 (citations omitted).

No. 15-60083

The parties agree that we must apply Mississippi's contract interpretation rules. In construing contracts under Mississippi law, the court must focus "upon the objective fact—the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other."[5] More fully, Mississippi relies on a "three-tiered approach to a contract interpretation," focusing on the actual words of the contract "to the exclusion of parol or extrinsic evidence."[6] First, we must look to the "four corners" of the contract, "read[ing] the contract as a whole, so as to give effect to all of its clauses."[7]

> Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. [T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.[8]

Second, if the court cannot discern the parties' intent from the text alone, the court should move on to the "discretionary 'canons' of contract construction," such as the principle that a contract subject to more than one fair reading will be construed so as to most benefit the non-drafting party.[9] The

---

[5] *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 110-11 (Miss. 2005) (quoting *Turner v. Terry,* 799 So. 2d 25, 32 (Miss. 2001)).

[6] *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003).

[7] *Id.*

[8] *Id.* at 752-53 (citations and internal quotation marks omitted, alteration in original).

[9] *Id.* at 753.

district court noted that the canons also include the principle that "specific language controls over general, inconsistent language."[10]

Third and finally,

> if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.[11]

As suggested above, if the subcontract requires arbitration under Mississippi law, then the arbitration provision is enforceable under the FAA.

### III.    DOES THE SUBCONTRACT BETWEEN RAC AND NOG REQUIRE NOG TO ARBITRATE THE CLAIMS PRESENTED HERE?

All parties agree that Section 27.4 generally provides that RAC and NOG "agree to litigate any claims between them." The only question is whether Section 27.3 applies under these circumstances to require NOG to join the arbitration to assert any claims or defenses against RAC arising out of the same general subject matter as RAC's existing arbitration against the Developer and Owners' Association.

NOG argues, and the district court concluded, that Section 27.3 applies only to NOG's claims against a third party, not RAC. NOG asserted in its complaint that "Section 27.3 of the RAC-NOG Subcontract . . . applies in circumstances where RAC and NOG each have similar claims against third parties, and it does not apply to claims between RAC and NOG." Similarly, the district court concluded that "Section 27.3 applies when the subcontractor has

---

[10] District Court Order, slip op. at 5 (citing *Harris v. Harris*, 988 So. 2d 376, 379 (Miss. 2008); *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990)).

[11] *Royer*, 857 So. 2d at 753 (internal citation omitted).

a claim or dispute with a third party." That reading ignores the plain language of Section 27.3, which is not limited to NOG's claims against a third party.

Section 27.1 of the RAC-NOG Subcontract provides that "all claims, disputes, and other matters in controversy or question between the Contractor and the Subcontractor arising out of or relating to this Subcontract shall be decided in accordance with this Section."

Section 27.2 provides:

> If the Contractor has a claim or dispute involving the same general subject matter, either in whole or in part, with the Owner, if so elected by the Contractor, the Subcontractor shall pursue its claim or resolve its dispute by timely submission of its claim through the Contractor to the Owner, and Subcontractor's recovery and any other relief shall be limited to the amounts actually recovered or other relief actually obtained by the Contractor through the Owner on account of the Subcontractor's claims or disputes.

By its plain terms, Section 27.2 applies only to claims the Subcontractor has *against the Owner*. It allows RAC to pursue those claims on behalf of NOG.

Section 27.3 provides:

> If the Contractor has a claim or dispute involving the same general subject matter, either in whole or in part, with any third party if elected by the Contractor, the Subcontractor shall assert its claims and defenses in and shall be bound by the same forum and in the same proceeding which has jurisdiction over the claims or disputes between the Contractor and such third party.

Unlike Section 27.2, there is no language in Section 27.3 limiting its application to NOG's claims against a particular party. Thus, the district court erred in reading Section 27.3 to apply only to NOG's claims against a third party. Instead, a plain reading shows that it applies to NOG's "claims and defenses" "involving the same general subject matter" as RAC's claim or dispute with any third party, and amounts to an agreement to arbitrate or

litigate its claims, depending on the forum of the existing dispute between RAC and a third party.

Under the plain language of Section 27.3, the present circumstances trigger its application. First, RAC does have a dispute with third parties, the Developer and Owners' Association. Second, the general subject matter of that dispute is alleged construction and design defects, apparently including some of NOG's work. NOG's "claim or defense" in this declaratory judgment action concerns the interpretation of Section 19.1 of the RAC-NOG Subcontract, a defense and indemnity obligation, which certainly concerns the "same general subject matter" as RAC's dispute with the third parties. Third, RAC elected to invoke Section 27.3 by asserting a third-party demand against NOG in the arbitration. Consequently, under a straightforward reading of Section 27.3, NOG agreed to arbitrate its claims under these circumstances unless somehow precluded by another contractual provision.

NOG attempts to sidestep Section 27.3 by arguing that Sections 27.4 and 27.5 mean that *all* claims "solely" between NOG and RAC *must* be litigated unless the parties agree to arbitrate. There are a few problems with NOG's interpretation. First, Mississippi law requires that we interpret the contract so as to give full effect to every provision. NOG's reading fails to give effect to the plain language of Section 27.3 because that reading impermissibly restricts its application to NOG's claims against a third party.

Second, while there may be some apparent tension between Sections 27.3 and 27.4, that tension is easily resolved by applying Mississippi's canon of statutory construction under which "specific language controls over general, inconsistent language."[12] Section 27.4 is a general provision applying to claims

---

[12] District Court Order, slip op. at 5 (citing *Harris*, 988 So. 2d at 379; *Pursue Energy Corp.*, 558 So. 2d at 352-53). Although the district court mentioned this canon, it did not need to apply it because it read Section 27.3 as applying only to NOG's claims against third parties.

between NOG and RAC, while Section 27.3 applies to all claims NOG might have (whether against RAC or a third party) under specific circumstances. The clear purpose of Section 27.3 is to allow for consolidated dispute resolution when there is already a proceeding between RAC and a third party.

Third, NOG argues that RAC's agreements with its other subcontractors contain much clearer provisions requiring arbitration, and RAC could have used those provisions here if it wanted that result. There is no merit to that argument. For one thing, RAC could have reached the same result in any number of ways. For another, we may only examine extrinsic evidence such as the other subcontracts if the RAC-NOG Subcontract "continues to evade clarity as to the parties' intent,"[13] but there is no such difficulty here because it clearly and unambiguously establishes an agreement to arbitrate under these circumstances.

Under the RAC-NOG Subcontract, Section 27.4 generally requires RAC and NOG to litigate claims between themselves, unless they specifically agree to arbitrate. However, Section 27.3 requires NOG to join RAC's existing arbitration or litigation with a third party *if* the dispute involves the same general subject matter as NOG's claim or dispute and *if* RAC elects to invoke the provision. Those conditions were satisfied here, and under the plain terms of Section 27.3, NOG is required to arbitrate. That plain language reading leads to more efficient dispute resolution through consolidation, and the result is clearly not coincidental. Because the arbitration clause is clear and unambiguous under Mississippi law, it is enforceable under the FAA.

---

[13] *Facilities, Inc.*, 908 So. 2d at 111.

No. 15-60083

## IV.   CONCLUSION

Because the RAC-NOG Subcontract requires NOG to assert its claims and defenses in the existing arbitration between RAC and the Developer and Owners' Association under these circumstances, we REVERSE the district court's January 22, 2015 order denying RAC's motion to compel arbitration and REMAND for entry of an order compelling arbitration.