## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00995-COA

**DENISE VON HERRMANN (RUNGE)**                                    **APPELLANT**

**v.**

**ANDREW BENJAMIN VON HERRMANN**                        **APPELLEE**

DATE OF JUDGMENT:                05/16/2014
TRIAL JUDGE:                     HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED:       FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          NANCY E. STEEN
ATTORNEY FOR APPELLEE:           SHAWN M. LOWREY
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         APPELLANT'S REQUEST FOR
                                 MODIFICATION OF ALIMONY DENIED
DISPOSITION:                     REVERSED AND REMANDED – 05/31/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Denise Von Herrmann Runge appeals from the judgment of the Chancery Court of Forrest County, denying her request for modification of the monthly alimony amount that she had been paying to her former husband, Andrew Von Herrmann. She argues that the chancery court erred in determining that the alimony described in their property-settlement agreement was lump-sum alimony rather than periodic alimony and therefore not modifiable.

¶2.     Finding error, we reverse the chancellor's judgment and remand the case for further proceedings.

**FACTS**

¶3.    Andrew and Denise were married on August 18, 1990, in the state of Georgia.

However, they later moved to Forrest County, Mississippi. On August 6, 2012, they filed a

joint complaint for divorce on the ground of irreconcilable differences. They attached "a

parenting and property settlement agreement" to their joint complaint. They amended the

agreement, which was ultimately incorporated into the October 2012 judgment of divorce.

The alimony provision in the agreement reads as follows:

> Wife shall pay husband periodic alimony as follows: On or before the 15th day
> of each month beginning August 15, 2012, $1,450[] per month through March
> 15, 2016. Beginning April 15, 2016[,] and continuing through September 15,
> 2022, [w]ife's periodic alimony to [h]usband shall be reduced to $500[] per
> month, with the final periodic alimony payment of $500[] due on September
> 15, 2022. All alimony payments shall otherwise cease 1) upon the demise of
> [w]ife or [h]usband or 2) upon [h]usband's remarriage or commencement of
> regular cohabitation with another woman.

At the time of the divorce, Denise was making $180,000 per year as a provost at Oglethorpe

University in Georgia. In June 2013, her position was eliminated, and her salary was reduced

to $70,000 per year. She subsequently accepted another position in the state of Montana that

pays her $85,000 per year.

¶4.    On July 24, 2013, Denise filed a complaint for modification, seeking a reduction of

her monthly alimony payments because of the reduction in her income.[1] Following a hearing

on the matter, the chancery court issued a final amended order, finding that "the alimony

---

[1] Denise also sought a modification of her child-support payments and an order
finding Andrew in contempt. However, this appeal concerns only the chancellor's decision
regarding alimony.

awarded to Andrew . . . appear[ed] to be lump sum, due to the fixed amount and the definitive ending date[, and therefore was not modifiable,] as it constituted lump sum alimony."

## DISCUSSION

¶5. Although chancery-court matters typically fall within the purview of a chancellor's discretion, the standard of review for the issue in this case, contract interpretation, is effectively addressed in *Harris v. Harris*, 988 So. 2d 376, 378 (¶8) (Miss. 2008), in which the Mississippi Supreme Court stated:

> This Court has long held that it will not disturb the findings of a [c]hancellor unless the [c]hancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. If a chancellor's findings are supported by substantial credible evidence in the record, this Court will not reverse. However, a property settlement agreement is a contractual obligation. Contract interpretation, as a question of law, is reviewed de novo.

(Internal citations and quotation marks omitted).

¶6. Denise argues that the provision for alimony in the parenting plan and property-settlement agreement has characteristics of both lump-sum and periodic alimony, and should be designated as periodic. In support of her argument, she cites the following language:

> In such cases of uncertainty, it is for the [c]hancellor and this [c]ourt to determine whether the agreement in question provides for what is essentially lump sum alimony or periodic alimony, and, in cases in which the *intent of the parties is not clear*, payments will be presumed to be payments of periodic alimony.

*McDonald v. McDonald,* 683 So. 2d 929, 932-33 (Miss. 1996) (emphasis added). Denise contends that if the provision is unclear as to intent, then periodic alimony should be the

3

default.

¶7.    In response, Andrew argues that the trial court was correct to find that the alimony award was lump-sum and therefore unmodifiable.  He argues that the type of agreement in this case is a hybrid alimony agreement.   Andrew admits that the agreement contains provisions that suggest the alimony is periodic, such as termination at death and remarriage and the use of the word periodic itself; however, he asserts there are countervailing provisions that suggest lump-sum alimony, such as the provisions providing that the alimony is a fixed amount and shall end on a specific date.  He further asserts that in that situation, the court should look to the substance of the agreement, not the label, as was the case in *Creekmore v. Creekmore*, 651 So. 2d 514, 518 (Miss. 1995), where the supreme court stated, "[w]ith or without a label attached, we must look to the substance of what has been provided to determine whether an obligation is lump-sum or periodic."

¶8.    We acknowledge the arguments of both parties.  However, neither party specifically addressed the issue of contract interpretation, even though the property-settlement agreement that was incorporated into the judgment of divorce "is a contractual obligation" of the parties. *Harris,* 988 So. 2d at 378 (¶8).  The supreme court has instructed that contract interpretation involves a three-tiered approach:

> First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement.  Second, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary canons of contract construction.  Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence.  It is only when the review of a contract

4

reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

*Id.* at 379 (¶10).

¶9. As noted, we first look to the plain language within the four corners of the document. In doing so, it is obvious that the ambiguity in the agreement is found within the provisions that tend to support a finding that the alimony is both lump-sum and periodic. The inclusion of language that the payments will cease at the death of either party or upon Andrew's remarriage or cohabitation with another woman supports a finding that periodic alimony was intended. Additionally, the use of the word "periodic" also suggests that periodic alimony was intended. However, the insertion in the alimony provision of a definite end date and a fixed number of payments, from which a specific amount can be ascertained, supports a finding of lump-sum alimony. Since there is a clear ambiguity as to the parties' intent, we move to the next step of the contract-interpretation analysis.

¶10. One of the discretionary cannons of contract construction is that "specific language controls over general inconsistent language in a contract.'" *Id.* at (¶12).[2] However, all of the language addressing alimony is specific. The language that the payments would end upon Andrew's remarriage or the death of either party and the language providing for a final payment and end date even if remarriage or death has not occurred are both specific. But

_____

[2] "Another rule of contract construction is that when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it." *Harris*, 988 So. 2d at 379 (¶13). Although the parties presented the agreement to the chancery court, there is no information in the record as to which party drafted each provision.

5

looking at the language of the agreement as a whole, it appears more likely than not that the parties contemplated periodic alimony. For example, although a total sum can be calculated, the parties did not list a lump-sum figure in the agreement. If lump-sum alimony was intended, it would have been a simple matter for the parties to specify that Denise would pay Andrew a lump-sum amount of whatever figure, payable in however many instalments of whatever amount, without addressing the eventuality of death of either party, or the remarriage or cohabitation by Andrew. To conclude that lump-sum, not periodic, alimony was intended would preclude giving any effect to the language regarding the cessation of alimony upon the death of either party or the remarriage or cohabitation by Andrew.

¶11.   We agree with Andrew that the supreme court has clearly stated that Mississippi courts must look to the "substance of what has been provided" to determine whether an obligation is lump sum or periodic—not the label that is attached. *Creekmore*, 651 So. 2d at 518. Although the parties used the word "periodic" several times in talking about the alimony that was to be paid, and never used the words "lump sum," we want to be clear that our decision is in no way driven by this fact alone.

¶12.   Since the ambiguity still exists after applying canons of contract construction, we move to the last tier of the analysis—extrinsic evidence—to clarify the intent of the parties in the formation of the settlement agreement. Based on the testimony in the record, we find that the parties intended for the alimony to supplement Andrew's living expenses, and to supplement the child-support award. This is evidenced by the original agreement that had a monthly alimony amount of $1,200, which was later raised to $1,450 in order to cover the children's cell-phone expenses. It is also evidenced in the comparison of the material

6

changes to the chancellor's order before and after modification. Andrew also testified that he treats the alimony payments he receives as income, and it is well established that periodic alimony payments are considered income to the payee and are deductible by the payor—but fixed-sum alimony is not. *Wray v. Wray*, 394 So. 2d 1341, 1345 (Miss. 1981) (citation omitted).

¶13. In addition, both parties cite *McDonald* to support their arguments. With respect to alimony, the agreement in *McDonald* states:

### LUMP-SUM ALIMONY

> Husband agrees to pay to Wife *lump-sum alimony* in the amount of $660,000.00 payable in monthly installments on the 1st day of each month beginning October 1, 1991, in the amount of $5,000.00 per month for 2 years and then $4,500.00 per month for the remaining 10 years, until said sum is *paid in full*. Each party recognizes that said sum *cannot be increased or decreased*, *or otherwise modified*, *regardless of the marital status* of either party. Both parties agree that said monthly payments shall be considered as *income to Wife* for tax purposes, and *tax deductible to Husband*, and that payments shall *cease upon full payment* of the alimony sum, or upon death of Husband, whichever first occurs.

*McDonald*, 683 So. 2d at 931 (emphasis added). All of those provisions were consistent with lump-sum alimony, and the only words that were inconsistent were "upon death of Husband," as lump-sum alimony does not end upon death, but periodic alimony does. *Id.* In the instance that "the intent of the parties is not clear," *McDonald* defaults to periodic. *Id.* at 933. It is clear that the provisions in the case at hand are not as readily attributable to one form of alimony as the provisions in *McDonald*.

¶14. Andrew also cites to *Neville v. Neville*, 734 So. 2d 352, 358 (Miss. Ct. App. 1999), as did the chancellor, for the proposition that, where George Neville was to receive "periodic

7

rehabilitative alimony" of $1,400 a month for a fixed period of ten years, this Court found that it was lump-sum alimony and not subject to modification because of the fixed nature of the payments. However, this Court's decision in *Neville* to find the alimony to be lump-sum alimony was not based solely on the fixed nature of the payments. *Id.* at (¶21). Neville's award was also based on his supporting his wife while she was in medical school. *Id.* This Court's "dissatisfaction with the [chancellor's] award because it required [Neville] to forego the possibility of remarriage in order to reap the benefit of his efforts on behalf of his former wife" seemed to have a greater influence on the outcome of the case than the interpretation of any intentions or agreements between the parties. *Id.*

¶15.    As noted, the label that the chancellor placed on the award is not outcome determinative, but it is clear from the opinion that this Court's finding—that the payments were lump sum—was not based solely on the fixed nature of the payments. *Id.* at (¶¶21-24). The chancellor intended to award Neville a fixed sum, payable in installments, as equitable compensation for the loss of his reasonably anticipated opportunity to share in his wife's future earnings. *Id.* *Neville* is clearly different from the case at hand; specifically, the chancellor did not want Neville's payments contingent on whether or not he remarried, which supported a finding that the award should be lump-sum. However, turning back to the case at hand, the agreement that the parties created provided that the payments *would* be contingent on whether or not Andrew remarried—which is *inconsistent* with lump-sum alimony. Furthermore, we find that the award to Andrew was a means of providing him with assistance after the marriage and not some form of equitable distribution such as in *Neville*. *Id.*

8

¶16.   We find that the parties intended to create periodic alimony as evidenced by the language in the agreement and related extrinsic evidence.  We reverse the chancellor's judgment and remand the case for a determination on the merits of Denise's request to modify periodic-alimony payments.

¶17.   **THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

   **LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**